UNITED STATES of America ex rel. George ALVAREZ, Petitioner-Appellant,

v.

Robert MURPHY, Warden of Auburn Prison, Auburn, New York, Respondent-Appellee.

No. 302, Docket 24361.

United States Court of Appeals Second Circuit.

Argued April 3, 1957.

Decided July 9, 1957.

Paul Weiss, Rifkind, Wharton & Garrison, New York City (Richard H. Paul, New York City, of counsel), for appellant.

Daniel V. Sullivan, Dist. Atty., Bronx County, N. Y., New York City (Walter E. Dillon and Irving Anolik, Asst. Dist. Attys., New York City, of counsel); Louis J. Lefkowitz, Atty. Gen., State of New York (James O. Moore, Jr., Sol.

Gen., State of New York, Albany, N. Y., Michael Freyberg, Deputy Asst. Atty. Gen., State of New York, of counsel), for appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.

LUMBARD, Circuit Judge.

This is an appeal from an order of Judge Brennan, Northern District of New York, denying without a hearing, the appellant's petition for a writ of habeas corpus which was sought on the ground that his conviction for robbery by the use of a coerced confession violated the due process requirement of the Fourteenth Amendment.

Alvarez is a prisoner at Auburn State Prison at Auburn, New York. On January 12, 1951 he was convicted in the County Court, Bronx County, New York, of Robbery, First Degree; Assault, First Degree; and of violation of § 1944 New York Penal Law, McKinney's Consol.Law, c. 40, for using an automobile to aid in the commission of a crime. In April 1951 Alvarez was sentenced to three consecutive terms totaling not less than 25 nor more than 50 years imprisonment.

Proof concerning the charges showed that on the morning of September 5, 1950 three men entered the apartment of Mr. and Mrs. Jack Levy on Phelan Avenue in the Bronx and at gunpoint robbed them of cash and some costume jewelry valued at about $155.00. On November 10, 1950 after the Levys had identified as the three robbers the petitioner's co-defendants, Soto, Calderon and Ruiz, Alvarez was arrested about 9:00 P.M. of the same day [1] as the driver of the get-away car, an automobile which was waiting nearby.

At the time of his arrest Alvarez was 18 years old. He had gone through grade 9-B in the New York public schools and had enlisted under-age in the United States Army and served two years and a day with the Military Police, receiving an honorable discharge. When arrested he was attending a school for private detectives under the "G. I. Bill." He was married and about to become a father. He had no record of prior arrests or convictions.

When taken into custody Alvarez was told only that he would find out the reason for his arrest on arrival at the station house. Upon arrival there Alvarez was questioned in the lieutenant's room. He alleges that, after he denied having had anything to do with the robbery, he was struck, kicked and beaten with a rubber hose and blackjack. As a result of this beating he was black and blue on his arms and back and an old ear injury was aggravated. Alvarez was questioned by three detectives and an Assistant District Attorney, together and in relays, for a good part of the night. Several times he was placed in the "line-up." It does not appear that he was given anything to eat or the opportunity to sleep. He was kept in various private offices for the most part, separated from the other persons charged with the robbery. It does not appear that he was given an opportunity to obtain a lawyer or to see any member of his family.

In the course of this questioning it is admitted that the detectives suggested various facts concerning the crime to Alvarez. Finally, at 5:50 A.M. the next morning, he gave a brief statement to the Assistant District Attorney who had been there all night. The statement was recorded by an official stenographer and Alvarez was thereupon "booked" for the robbery.

Three days later on November 14 when Alvarez was brought before City Magistrate Prendergast, his then attorney, Aaron Slavetsky, called to the court's

---

[1] Detectives Farrell and Foden telephoned the Alvarez home about 6:00 P.M that evening. Since Alvarez was not there at that time, they left a message requesting him to call them when he arrived. About 9:00 P.M. Alvarez telephoned the detectives, waited for them on the sidewalk in front of his home and accompanied them to the station house.

attention the fact that he had welts all over his body as a result of police brutality and that the welts were recent. To this the Assistant District Attorney, the same one who had been at the station house all night, replied that "no complaint was made by this defendant at the 41st precinct station on the night of his arrest." [2]

On November 21 when Alvarez pleaded not guilty in the Bronx County Court, his attorney Francis X. Dunn, stated that when he first saw Alvarez at the county jail the preceding Saturday Alvarez had disrobed and "his back was totally black and blue." Mr. Dunn advised the Court that if there was a confession the issue would be raised at the trial.

The Medical Report of the Bronx County Jail showed that on November 13 Dr. Contino examined Alvarez and recorded that "George Alvarez had running ear, few black and blue marks on arms and back." Dr. Contino had not visited the jail on November 11 and 12. The doctor also examined Alvarez on November 14 and 20 and noted a "running ear" on both visits.

At his trial in January 1951 the issue of police brutality in obtaining Alvarez' confession was before the jury. However, important evidence which would have supported Alvarez' claim that he was beaten was not before the jury. What occurred at his arraignments in the Magistrate's Court on November 11, 14 and in the Bronx County Court on November 21 was not brought out at the trial, nor did either of his attorneys, Slavetsky or Dunn, testify on his behalf. Furthermore, neither the medical record of the County Jail nor the testimony of Dr. Contino was before the trial jury. It cannot be argued that because these

matters were not brought to the jury's attention Alvarez may be foreclosed from raising them in the *coram nobis* proceeding or in this proceeding. Indeed, some of these facts were not known to his trial attorney. All of these facts make it clear that on this record there is a very serious question whether on all the facts Alvarez' confession was coerced. At a hearing of the petition in the District Court there will also be available the testimony of the Assistant District Attorney who was present when Alvarez made his confession at the station house.

On the People's case, the three detectives who had questioned Alvarez testified that he made the statement voluntarily, and that they had not beaten or coerced him. The Levys testified that when they saw Alvarez at about 11:00 P.M. no bruises were visible. Thus, over objection, the Court received Alvarez' confession that he drove Soto, Calderon and Ruiz to the Levy apartment house, waited downstairs in the car, and drove them away after the robbery.

Alvarez testified in his own behalf. He denied any part in the robbery and said he was beaten and coerced into making the statement after the detectives had told him what Soto, Calderon and Ruiz had admitted. He was corroborated in part by Venancio Soto, Soto's father, who said he had seen Alvarez that night at the police station and that his right cheek was swollen, and that he had heard Alvarez screaming in another room.

Alvarez' confession and two bits of testimony in the nature of admissions constitute the entire proof against him. One of the detectives testified that when the Levys were at the station house Mr. Levy asked the defendants what they

---

**2.** Regarding the evidence of beating which Alvarez bore on his body, the District Attorney makes this ingenious explanation in his brief: "It is perfectly logical that upon reflection, Alvarez realized that the confession and statement he had made on the evening of November 10th were extremely incriminating and consequently the scratches and black and blue marks which were apparent on his body on November 14 when he again appeared in Magistrate's Court might well have been self-inflicted or inflicted by a confederate at his behest so that the use of his confession and statements would be precluded at a trial." Of course at the hearing whatever evidence bears on this may be presented.

had done with the jewelry; Alvarez said it was junk and "We threw it down the sewer \* \* \* on the way back we stopped and got rid of it." The Levys themselves, although called as witnesses, were not asked about this. Jack Levy did testify that he heard Alvarez say (apparently while being questioned by the detectives) that he was downstairs in the car, presumably referring to where he was while the other three were upstairs in the Levy apartment.

Thus the case against Alvarez rests entirely on admissions and is not corroborated by a single bit of evidence independent of his questioning by the police more than two months after the robbery.[3]

After the Appellate Division affirmed the conviction but modified the sentence imposed on Alvarez because of his "extreme youth" People v. Soto, 1 Dept. 1953, 282 App.Div. 1042, 126 N.Y.S.2d 896, Alvarez made application to a judge of the Court of Appeals for leave to appeal to the Court of Appeals and it was denied. He did not seek certiorari. But some time prior to January 4, 1955 Alvarez moved in the Bronx County Court for a writ of error *coram nobis* to vacate his conviction on the ground that he had been denied due process as guaranteed by the Fourteenth Amendment. On January 4, 1955 his motion was denied without a hearing. On appeal the Appellate Division affirmed without opinion (People v. Alvarez, 1955, 1 A.D.2d 660, 147 N.Y.S.2d 681). Leave to appeal to the Court of Appeals was denied by a judge of that court and on May 28, 1956 the appellant's petition for certiorari was likewise denied. Alvarez v. People of State of New York, 1956, 351 U.S. 955, 76 S.Ct. 853, 100 L.Ed. 1478.

Alvarez applied to the District Court for the Northern District of New York for a writ of habeas corpus on June 22, 1956. What Alvarez claims in his petition is what he has claimed from the start: that the statement he made at the station house was given "because of fear and because they beat him unmercifully"; that the District Attorney suppressed the fact that the confession "was obtained through police brutality" and "misrepresented \* \* \* to the Court and Jury; that this alleged confession \* \* \* was made voluntarily."

After the District Court denied the writ, but granted a certificate of probable cause under 28 U.S.C.A. § 2253, we granted Alvarez' motion for leave to proceed *in forma pauperis* and assigned counsel to prosecute his appeal.

The District Attorney contends that Alvarez has failed to exhaust his state remedies as required by 28 U.S.C.A. § 2254, since he did not petition the United States Supreme Court for certiorari after a judge of the Court of Appeals had denied leave to appeal from the decision of the Appellate Division affirming his conviction in his original appeal and that this petition is but a substitute for such an appeal. There is no merit in these contentions.

 It is well settled that a state prisoner, in order to exhaust his state remedies before seeking federal habeas corpus must follow so far as possible only one of the available remedies in the state court, so long as he there raises the federal question. It is not necessary that he seek to obtain redress by every possible state proceeding. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Wade v. Mayo, 1948, 334 U.S. 672, 678, 68 S.Ct. 1270, 92 L.Ed. 1647.

 Nor can it be said that Alvarez is using the present petition as a substitute for appeal. His petition presents only a federal question, namely whether he has been denied due process as guaranteed by the Fourteenth Amendment through the use at his trial of a coerced confession. We think that he has made a showing that he was so deprived of his constitutional right, and he is entitled to a hearing on this question.

---

3. We do not include the confessions of his co-defendants as they are not to be considered against him.

The use of a coerced confession in a state court criminal trial is prohibited by the Fourteenth Amendment. Leyra v. Denno, 1954, 347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948; Brown v. Allen, 1953, 344 U.S. 443, 475, 73 S.Ct. 397, 97 L.Ed. 469; Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Chambers v. State of Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; United States ex rel. Caminito v. Murphy, 2 Cir., 1955, 222 F.2d 698. And reviewing the circumstances surrounding Alvarez' confession, we have concluded that the additional proof which petitioner seeks to offer should be heard by the District Judge on the issue of whether the confession of Alvarez was the result of coercion and brutality.

The order is therefore reversed and the case is remanded to the District Court for a hearing of the petition.

We take this opportunity to commend Richard H. Paul, Esq. for his representation of the petitioner as counsel assigned by this Court.