UNITED STATES of America ex rel.
Charles NOIA, Relator,

v.

Edward M. FAY, as Warden of Greenhaven Prison, State of New York,
Respondent.

United States District Court
S. D. New York.

March 14, 1960.

On the Merits April 8, 1960.

Maurice Edelbaum, New York City, for relator.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y., William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel, for respondent.

CASHIN, District Judge.

This is an application for a writ of habeas corpus by a State court prisoner. The relator, through his attorney, alleges that he has been deprived of his constitutional rights because he has been convicted on the basis of a coerced confession.

■ It is conceded that the relator did not appeal the judgment of conviction and that a subsequent petition for a writ of error *coram nobis*, although granted by the County Court of Kings County, People v. Noia, 3 Misc.2d 447, 158 N.Y.S.2d 683, was reversed by the Appellate Division, Second Department, 4 A.D.2d 698, 163 N.Y.S.2d 796, and affirmed by the Court of Appeals, People v. Caminito, 3 N.Y.2d 596, 170 N.Y.S. 2d 799, 148 N.E.2d 139. The Supreme Court subsequently denied certiorari, 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156.

Relator relies upon the abortive *coram nobis* proceeding as exhausting his State court remedies. I have grave doubt as to the efficacy of the *coram nobis* proceeding as exhausting his State court remedies. Accordingly, even though the

issue has not been raised by the petition or the answering affidavit of the District Attorney, I deem it advisable to grant a hearing on the writ, limited at this time to the circumstances surrounding the failure of the relator to take an appeal in the first instance.

The hearing on the writ shall be held on the 31st day of March, 1960, at two P. M. At this hearing the parties shall present any evidence available to them concerning the issues to be determined on the hearing.

Let the attorney for the relator submit a writ.

It is so ordered.

### On the Merits

This is a petition for a writ of habeas corpus brought by the relator's attorney.

The relator, along with two others, namely, Frank Bonino and Santo Caminito, was arrested on Sunday, May 11, 1941, by the New York City Police Department in connection with a homicide which occurred during the commission of an armed robbery on February 16, 1941, on the streets of Brooklyn.[1] Each of the three arrested later confessed to the crime under investigation, were indicted and were found guilty of murder in the first degree. The only evidence adduced at the trial was the fact that the crime had been committed and the confessions of the defendants.

The trial was conducted on the theory of "felony murder". Under New York State law the death sentence is not mandatory in a felony murder case. Rather, the jury may recommend mercy and if this recommendation is accepted by the court a sentence of life imprisonment is imposed. In the trial, of which the relator presently complains, the jury recommended mercy for all three defendants. Although the trial court ultimately accepted the recommendation as to all

---

[1]. In the petition relator's attorney states that the relator was "taken into custody" and distinguishes such action from an "arrest". Whether there is any distinction between these two terms I will not consider since, for the purpose of this Opinion, any such distinction is irrelevant. I will, therefore, use the term of "arrest" to describe the action taken by the police.

three, the acceptance as to the relator was made with great reluctance since the relator had confessed to being the defendant who had actually perpetrated the homicide.

The defendants, Bonino and Caminito, appealed their conviction to the Supreme Court, Appellate Division, Second Department and, on affirmance by that court, to the Court of Appeals of the State of New York. In these appeals there was presented for consideration by the appellate courts the federal constitutional question of denial of due process because of the admission of coerced confessions. The convictions were affirmed by both courts. Neither defendant petitioned to the Supreme Court of the United States for certiorari at that time. The relator did not appeal at all. Sometime later, the codefendant Caminito moved in the Court of Appeals of New York for reargument. This reargument was denied (People v. Caminito, 297 N.Y. 882, 79 N.E.2d 277). At still a later time Caminito moved again for reargument and again reargument was denied (307 N.Y. 686, 120 N.E.2d 857).[2] Caminito then made a timely petition to the Supreme Court of the United States for review by certiorari. This petition was denied (348 U.S. 839, 75 S.Ct. 46, 99 L.Ed. 662). After the denial of certiorari, Caminito petitioned for a writ of habeas corpus in the United States District Court for the Northern District of New York alleging deprivation of his constitutional rights because of the use of a coerced confession. The petition was dismissed (United States ex rel. Caminito v. Murphy, D.C., 127 F.Supp. 689). On appeal to the Court of Appeals for the Second Circuit the denial of the petition was reversed and on the basis of the state court record the confession was held to have been coerced (222 F.2d 698). Caminito was released and is still at liberty although he remains under indictment.

Taking advantage of Caminito's successful proceedings Bonino moved in the Court of Appeals of New York for reargument. This motion was granted (People v. Bonino, 309 N.Y. 950, 132 N.E.2d 320) and, on the reargument, Bonino was successful, the Court of Appeals of New York reversing the conviction on the authority of the decision of the Court of Appeals for the Second Circuit in the Caminito case (1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51). Bonino is also presently at liberty although still under indictment.

The relator was not able, of course, to follow the proceedings pursued by either Caminito or Bonino since he had not appealed the original conviction. Rather, the relator brought in the sentencing court, the County Court of Kings County, a proceeding in the nature of a writ of error *coram nobis*. This proceeding was successful, the conviction was set aside and the relator was released. However, upon appeal the Appellate Division of the Supreme Court, Second Department reversed the County Court, the Court of Appeals of New York affirmed the reversal, and the Supreme Court of the United States denied certiorari. People v. Noia, County Court, 3 Misc.2d 447, 158 N.Y.S.2d 683; Appellate Division, 4 A.D.2d 698, 163 N.Y.S.2d 796; Court of Appeals, 3 N.Y.2d 596, 170 N.Y.S.2d 799; Supreme Court, 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156. Subsequently, the instant proceedings were commenced in this court. A Judge of this court entertained the petition and ordered the respondent to show cause why the writ should not issue. On the argument of the order to show cause I issued the writ for the limited purpose of a hearing on the circumstances surrounding the relator's failure to appeal the conviction in the first instance. The hearing was held on March 31, 1960. At this hearing the relator testified on behalf of himself and his trial attorney testified on behalf of

2. The New York Court of Appeals rules have no time limitation for a motion for reargument.

the respondent. Based upon the state court proceedings and that hearing I have determined that the writ must be dismissed.

Section 2254 of Title 28 U.S.C. provides that—

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

 In one sense, of course, the relator has exhausted his state court remedies since there is no proceeding available to him in the State, apart, of course, from executive clemency, which can effect his release from a patently unconstitutional detention.[3] However, exhaustion of state court remedies does not only mean that at the time of the petition before the Federal District Court there is no remedy available in the State. It further means that the relator has availed himself of at least one corrective process available in the courts of the state if there be such a process. Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

That there was a state court process available to the relator is obvious since the codefendants have obtained their releases.

 The relator claims that he has invoked a corrective process in the state court by means of the *coram nobis* proceeding. In my prior Memorandum in this case filed on March 14, 1960, ordering that the writ issue, I characterized the *coram nobis* proceeding as "abortive". I utilized this term since the Court of Appeals held, in its opinion on the *coram nobis* proceeding, that the relator could not obtain a review of his conviction by *coram nobis* because of the coerced confession since such review could have been obtained by appeal. Thus, it is clear that the constitutional question presented here was not passed upon by the state appellate courts in either the *coram nobis* proceeding, because the court would not consider the question, nor in direct appellate proceedings because the relator took no appeal.

The relator has not, therefore, within the meaning of Title 28 U.S.C. § 2254, exhausted his state court remedies. I had thought that perhaps a hearing on the circumstances surrounding the relator's failure to appeal might reveal some exceptional circumstance which would excuse the lack of invocation of the ordinary appellate procedure. The hearing, however, utterly failed to reveal any such circumstance.

Relator's trial counsel testified that he had advised relator of his rights to appeal. The relator did not at all deny that he knew of his rights to appeal. He, however, testified that he did not appeal because he had no funds to retain an attorney to prosecute the appeal and did not wish to put his family further into debt.[4] However commend-

---

3. Even a cursory reading of the opinion of the Court of Appeals for the Second Circuit in the Caminito case (222 F.2d 698) indicates that all of the defendants were coerced, and the Court of Appeals of the State of New York in the Bonino case has recognized this (1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51).

4. The respondent adduced evidence which tends to show that the relator's motive for not appealing might well have been the fear that on a retrial the death penalty might be imposed. I prescind from making any finding on this issue since I think it is entirely unnecessary.

able this motive for not appealing might be, it does not aid the relator.[5]

The Court of Appeals for the Second Circuit has held, as recently as 1957, that indigency alone cannot excuse a failure to appeal so as to give a state court prisoner a right to invoke federal habeas corpus. This decision was rendered in the case of United States ex rel. Kozicky v. Fay, 248 F.2d 520. In that case, as here, the petitioners' grounded their right to be released on the assertion that coerced confessions were used against them. There the petitioners did appeal their conviction to the Appellate Division, which affirmed such conviction. The affirmance was not appealed but motions for rearguments were made. The motions were denied and leave to appeal from that denial was denied by the Court of Appeals. A petition for a writ of certiorari to the Supreme Court was also denied. Under these circumstances, the Court of Appeals for the Second Circuit held that—

" * * * the merits of the case were never presented either to the Court of Appeals or the United States Supreme Court."

So, in the instant proceeding the merits of the case were not presented to those courts nor even to the appropriate Appellate Division. There, as here, the petitioners sought to avoid the effect of their failure to appeal by reason of poverty but without success. Here, as there, the relator must also be unsuccessful.

The relator relies exclusively on the case of United States ex rel. Alvarez v. Murphy, 2 Cir., 1957, 246 F.2d 871. In the Alvarez case, once again, the alleged deprivation of due process was the utilization of a coerced confession. There, as here and in United States ex rel. Kozicky v. Fay, supra, the relator failed to exercise the state court remedies by way of appeal. There, as here, the relator brought coram nobis and was unsuccess-ful. In the coram nobis proceeding the relator, as the present relator, went through the entire state court hierarchy of courts including denial of certiorari by the Supreme Court of the United States. There, however, relator was held to have exhausted his state court remedies. The case, however, I believe is distinguishable. The Court of Appeals found that all of the circumstances tending to show coercion were not before the trial court. It did, however, find that all those circumstances were before the state courts in the coram nobis proceeding and before the federal courts in the habeas corpus proceeding since it stated (246 F.2d at page 873)—

"It cannot be argued that because these matters were not brought to the jury's attention Alvarez may be foreclosed from raising them in the coram nobis proceeding or in this proceeding".

Thus, the Court of Appeals found that the question of coerced confession had been properly presented to the state courts for review and thus was properly before the federal courts for review.

In the instant case there has been absolutely no showing, in fact it appears conceded otherwise, that any facts tending to show coercion were presented in the state court coram nobis proceeding which were not presented at the trial and thus available for review by the state courts by way of appeal. As a further indication of the weakness of the Alvarez case to support the present relator is the fact that the author of the Alvarez opinion, decided July 9, 1957, Judge Lumbard, concurred in the opinion of Judge Waterman in the Kozicky case decided September 20, 1957, only some two and one-half months subsequent to the Alvarez decision.

A very recent case decided by the Court of Appeals for the Second Circuit also supports my conclusion. This case

<hr>

5. I might note, in passing, that absolutely no evidence of the indigency of relator's family was adduced at the trial except the relator's conclusory statement, despite the fact that there were several spectators at the hearing who were presumably relatives of the relator. In addition, absolutely no explanation was offered by relator for his failure to proceed to adduce any such evidence of indigency.

is United States ex rel. Williams v. La Vallee, 276 F.2d 645. In the Williams case the coercion point was raised by appeal to the Court of Appeals of New York State. In the Court of Appeals, however, the American Civil Liberties Union was permitted, as *amicus curiae*, to submit a brief in which it was argued that a statute of New York State allowing the sentencing judge to consider an ex parte pre-sentence report as an aid to his decision as to whether to accept the jury's recommendation of mercy in a felony murder case was unconstitutional under the 14th Amendment. The verdict of conviction and sentence of death was upheld by the Court of Appeals. Review of the Court of Appeals' holding that the New York State statute attacked was constitutional could be had by appeal. Review of the holding that the confession was not coerced could be had, however, only by certiorari. Williams' counsel chose to come before the Supreme Court by way of appeal. Under these circumstances the Court of Appeals for the Second Circuit held that Williams had not exhausted the state court remedies because the Supreme Court had not been presented with the coercion question.

On the reasoning in the authorities cited above I feel constrained to dismiss the writ because of relator's failure to exhaust his state court remedies. In taking this action I am not unaware that an anomalous situation is presented. This anomaly arises as follows:—

If a state is zealous in assuring that unconstitutional convictions are not obtained and to this end allows a post-conviction remedy other than appeal, the federal court has jurisdiction to review the state court conviction no matter when this post-conviction remedy is availed of. On the other hand, if a state is far less zealous in the interests of justice and refuses any post-convic-

tion remedy on grounds which could have been raised by appeal, the federal courts are precluded from any review if an appeal be not taken. However, this is the only conclusion which I can reach on a review of the decided cases.

I have reached the conclusion that I must dismiss the writ. I have done this with great reluctance. Not only is the anomalous situation just pointed out present but also my dismissal of the writ leaves one codefendant incarcerated for the term of life imprisonment while the other two codefendants, convicted on the basis of precisely the same coercion, are virtually scot free.[6] Accordingly, I have determined that a certificate of probable cause should issue.

Writ dismissed. Certificate of probable cause granted.

It is so ordered.

---

6. Even though Bonino and Caminito still remain under indictment it is most highly improbable that they will ever be tried again since the State presented no evidence but the presently unavailable coercion confessions in 1942. The obtaining of new evidence would appear at this late date impossible. See People v. Caminito, 4 A.D.2d 697, 163 N.Y.S.2d 699.