**UNITED STATES of America ex rel. Charles NOIA, Relator-Appellant,**

v.

**Edwin M. FAY, as Warden of Greenhaven Prison, State of New York, Respondent-Appellee.**

No. 308, Docket 26557.

United States Court of Appeals Second Circuit.

Argued April 20, 1961.

Decided Feb. 7, 1962.

Certiorari Granted May 14, 1962.

See 82 S.Ct. 1140.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y. (William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel), for appellee.

Edward Q. Carr, Jr., New York City, Legal Aid Society (Leon B. Polsky, appellate counsel), New York City, for appellant.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

Relator, Charles Noia, and two others, Frank Bonino and Santo Caminito, were convicted twenty years ago under the laws of the State of New York for the crime of murder in the first degree upon an indictment alleging a felony murder in that they committed a homicide while engaged in an armed robbery. At trial the State offered nothing to connect any of the three with the crime except their several confessions, admitted into evidence over objections by defense counsel on the ground that the confessions were involuntarily made. Each defendant testified in his own defense and introduced evidence that each of the three confessions was obtained by police coercion in violation of the Fourteenth Amendment. The issue of the voluntariness of these confessions was submitted to the jury, the judge charging that if the confessions were found to be involuntary ones the defendants should be acquitted. The jury returned verdicts of guilty but, as it may do in New York in felony murder cases, recommended clemency. The judge accepted the jury recommendations and sentenced each of the three defendants to life imprisonment. Necessarily implied in the verdicts was a jury finding that the three confessions were not involuntary.

Bonino and Caminito appealed their convictions to the New York Supreme Court, Appellate Division, Second Department, and, on affirmance by that court, People v. Bonino, 265 App.Div. 960, 38 N.Y.S.2d 1019 (1942), appealed to the New York Court of Appeals, 291 N.Y. 541, 50 N.E.2d 654 (1943). Noia did not appeal. Both of the appellate tribunals considered whether the two appealing defendants had been denied due process of law by the use of their allegedly coerced confessions. The courts rejected the appellants' contentions, and affirmed the convictions. Neither Caminito nor Bonino petitioned the United States Supreme Court for certiorari at that time. Later, on two different occasions, Caminito moved the New York Court of Appeals for reargument of his appeal. These motions were denied, People v. Caminito, 297 N.Y. 882, 79 N.E.2d 277 (1948); 307 N.Y. 686, 120 N.E.2d 857 (1954).[1] After the second denial

---

**1.** The rules of the New York Court of Appeals impose no time limit within which a motion for reargument must be filed.

Caminito filed a petition in the U. S. Supreme Court for certiorari, which was denied, 348 U.S. 839, 75 S.Ct. 46, 99 L.Ed. 662 (1954).

Caminito forthwith petitioned the United States District Court for the Northern District of New York for the issuance of a federal writ of habeas corpus. He once more claimed that he had been denied due process of law at his New York State trial by the admission against him of his coerced confession. His petition was denied, United States ex rel. Caminito v. Murphy, 127 F.Supp. 689 (1955), but on appeal to our court the district court was reversed, 2 Cir., 222 F. 2d 698 (1955). We held, as a matter of law, that Caminito's confessions had been coerced in violation of his right to due process of law under the Fourteenth Amendment and that consequently his conviction was void. A petition for certiorari to the U. S. Supreme Court was denied, 350 U.S. 896, 76 S.Ct. 155, 100 L. Ed. 788 (1955).

Thereupon Bonino, the other defendant who had appealed his conviction, petitioned the New York Court of Appeals for reargument of his appeal. That court granted his application, reversed the conviction, and ordered that upon retrial his coerced confession not be introduced against him. People v. Bonino, 1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51 (1956). In fact, neither Caminito nor Bonino has ever been retried, as indeed it would appear to be impossible to obtain their convictions without the use of these confessions; and, though they continue to be subject to indictment, they are free from restraint.

As previously stated, Noia, the relator here, did not appeal from his conviction. Hence the post-conviction procedure of applying for a belated reargument in the New York Court of Appeals, utilized first by Caminito and then by Bonino, was unavailable to him. Nevertheless, Noia was convicted at the same trial as were the other two, and convicted by the same means; therefore, if their convictions were void it seemed reasonable to incarcerated Noia that his conviction was also void. He thereupon moved to set aside

his conviction and sentence by a proceeding in Kings County Court, the court wherein he was originally tried, convicted and sentenced. Noia could maintain no ground for setting aside his conviction other than the contention that his coerced confessions were inadmissible, a ground urged upon the trial court at the time of trial. He argued that since this ground had sufficed to void the convictions of his companion defendants, Caminito and Bonino, the sentencing court must have inherent power to set aside his conviction also, a conviction obtained through the same denial of due process.

The Kings County Court found that Noia's conviction was manifestly unlawful and ordered it vacated. People v. Noia, 3 Misc.2d 447, 158 N.Y.S.2d 683 (County Ct.1956). The State appealed to the Appellate Division, Second Department, where the decision of the County Court was reversed, 4 A.D.2d 698, 163 N. Y.S.2d 796 (1957). In a memorandum opinion the Appellate Division unanimously held:

"It was error to vacate the judgment. The respondent's contentions with respect to the illegality of his conviction involve matters which could have been adequately reviewed on appeal from the judgment of conviction. No appeal was taken. This being so, the court was without authority to grant the application (People v. Sadness, 300 N.Y. 69, 89 N.E.2d 188; People v. Russo, 284 App.Div. 763, 135 N.Y.S.2d 475; People v. Palumbo, 282 App.Div. 1059, 126 N.Y.S.2d 381)." 163 N.Y. S.2d 796, 797.

Noia, in turn, appealed to the New York Court of Appeals, which unanimously affirmed the Appellate Division. People v. Noia, reported sub nom., People v. Caminito, 3 N.Y.2d 596, 170 N.Y.S.2d 799, 148 N.E.2d 139, cert. denied, Noia v. People of State of New York, 357 U.S. 905, 78 S. Ct. 1149, 2 L.Ed.2d 1156 (1958). Relying upon People v. Rizzo, 246 N.Y. 334, 339, 158 N.E. 888, 890, 55 A.L.R. 711 (1927), the Court of Appeals held that Noia's failure timely to appeal from his conviction precluded him from obtaining the

post-conviction relief he sought. The court went on to discuss the revitalization in New York of the extraordinary writ of *coram nobis,* see Lyons v. Goldstein, 290 N.Y. 19, 47 N.E.2d 425, 426, 146 A.L.R. 1422 (1943), and pointed out that, even though the scope of that common law writ had been somewhat expanded beyond its original office by the New York courts, it was still only usable in New York for the purpose for which it was initially designed, that of presenting facts to the court of which the court was not aware at the time of the judgment sought to be vacated. 3 N.Y. at 601, 170 N.Y.S.2d at 804, 148 N.E.2d at 142. Therefore, since the ground upon which Noia sought to have his conviction set aside was apparent on the record at the time when he could have appealed, no post-conviction remedy was available to him. This was held to be so, even though the convictions of Caminito and Bonino had been vacated, the former by action of a federal court after Caminito had fully prosecuted his appeal through the New York State Courts, and the latter by a reversal upon reargument in the New York Court of Appeals itself. 3 N.Y. at 600, 170 N.Y.S.2d at 803, 148 N.E.2d at 142.[2]

After this adverse decision by the highest court of New York and the subsequent denial of his petition for a writ of certiorari in the U. S. Supreme Court, Noia petitioned the U. S. District Court for the Southern District of New York for a writ of habeas corpus in order to present to a federal court his claim that he was convicted without due process of law. Before a federal district judge could consider the merits of relator's application, Noia had to satisfy the threshold requirement set forth in 28 U.S.C. § 2254 (1958), which provides that:

"§ 2254. State custody; remedies in State Courts

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

The purport of the statute was exhaustively considered by the district judge who, in a written opinion, reported at 183 F.Supp. 222, concluded that a study of the authorities required that the statute be interpreted so as to foreclose any petitioner who had exhausted all presently available state remedies from obtaining habeas corpus relief if he had failed to pursue a previously available state remedy during the time when that remedy had been available to him. Inasmuch as Noia had not timely appealed his conviction when he could have done so, and inasmuch as the New York courts as a result of this delinquency had subsequently dismissed his latterly-brought *coram nobis* proceeding without reaching the merits of his constitutional claims, the federal district judge concluded that Noia had not exhausted his state remedies as required by the statute. In an effort to justify the failure timely to appeal his conviction relator asserted that he did not then appeal because he had no funds and he did not wish to cause his family further expense. The warden's evidence tended to indicate that Noia had not appealed for fear that upon a retrial he might receive the death penalty. The court held relator's explanation insufficient to excuse the procedural omission and so reluctantly dismissed relator's habeas corpus petition. He found it unnecessary to make any findings with refer-

---

2. Compare People v. Boundy, Dkt. No. 331, New York Court of Appeals 1962, 10 N.Y.2d 518, 225 N.Y.S.2d 207, 180 N. E.2d 565, with People v. Codarre, 10 N.Y. 2d 361, 223 N.Y.S.2d 457, 179 N.E.2d 475 (1961).

ence to the warden's suggestion. The judge recognized that it was clear that Noia, like Caminito and Bonino, could not have been convicted except for the introduction at trial of the coerced confession, and he found that Noia was being held in a "patently unconstitutional detention," 183 F.Supp. at 225, and that prior to trial Noia had been subjected to precisely the same coercion as were his two codefendants, who, though convicted with him, were now "virtually scot free." 183 F.Supp. at 227.

### Waiver

■■ The first question before us is whether, inasmuch as his conviction was not appealed, Noia waived his undeniable constitutional right of being tried without his coerced confession in evidence. The answer to this question is to be determined according to federal law. The issue of whether there has been a waiver of a federal right is to be federally determined, even if the alleged waiver is the failure to take a particular state procedural step. See Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Davis v. O'Hara, 266 U.S. 314, 45 S.Ct. 104, 69 L.Ed. 303 (1924); cf. Dice v. Akron, C. & Y. R. R., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952). The Supreme Court has said that waiver is ordinarily "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The highest Court has instructed us to indulge all reasonable presumptions against the waiver of a fundamental constitutional right. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169 (1883). As was said in Ohio Bell Tel. Co. v. Public Utilities Comm., 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937), "We do not presume acquiescence in the loss of fundamental rights." We must apply these principles to Noia's case.

Sometimes, it is true, courts have said that a litigant has "waived" a right in circumstances where it is obvious that a known right was not intentionally abandoned within the standard announced in Johnson v. Zerbst, supra. In some instances, we fear, "waiver" has been misused and abused, twisted and tortured, in order either to dispose of a bothersome factual ambiguity or to reach results that would have been more accurately supportable upon other grounds. See Reitz, Federal Habeas Corpus: Impact of an Abortive State Proceeding, 74 Harv.L.Rev. 1315, 1333 (1961). It can truly be said that in such cases the term "waiver" is used to describe, rather than to explain, the result reached. We do not wish to fall into this intellectual trap. If the term "waiver" does indeed identify some legal concept relevant to the case before us other than that defined in Johnson v. Zerbst, it must be contained within one of those combinations where law is applied to fact which it is more suitable to discuss below under a different conceptual label.

We turn to a consideration of whether Noia waived his constitutional right within the ambit of the term as it was defined in Johnson v. Zerbst. It would seem that a conscious and willing failure to appeal could indeed be a form of waiver. Brown v. Allen, 344 U.S. 443, 503, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.); cf. Frank v. Mangum, 237 U.S. 309, 343, 35 S.Ct. 582, 59 L.Ed. 969 (1915). If a convicted defendant is clearly apprised of a violation of his constitutional rights and of the procedure available to him for vindicating those rights, and if he is under no unfair restraint preventing this vindication, his failure to employ that procedure can be said to be an intentional relinquishment of a known right. But see Reitz, supra, at 1335.

It has been asserted that a defendant cannot waive those rights without enforcement of which the proceedings against him would be fundamentally unfair. Reitz, supra, at 1333. Among such non-waivable rights would be the right to be tried by an impartial tribunal, the right to be tried by a court free from mob domination—and the right not to be convicted solely upon the basis of a coerced confession. Perhaps Mr. Justice Frankfurter was referring to this concept of non-waivable rights when he said:

"Of course, nothing we have said suggests that the federal habeas corpus jurisdiction can displace a State's procedural rule requiring that certain errors be raised on appeal. Normally rights under the Federal Constitution may be waived at the trial, Adams v. United States ex rel. McCann, 317 U.S. 269 [63 S. Ct. 236, 87 L.Ed. 268], and may likewise be waived by failure to assert such errors on appeal. Compare Frank v. Mangum, 237 U.S. 309, 343 [35 S.Ct. 582, 593, 59 L.Ed. 969]. When a State insists that a defendant be held to his choice of trial strategy and not be allowed to try a different tack on State habeas corpus, he may be deemed to have waived his claim and thus have no right to assert on federal habeas corpus. Such considerations of orderly appellate procedure give rise to the conventional statement that habeas corpus should not do service for an appeal. See Adams v. United States ex rel. McCann, supra [317 U.S.], at page 274 [63 S.Ct. at page 239]. Compare Sunal v. Large, 332 U.S. 174 [67 S.Ct. 1588, 91 L.Ed. 1982], with Johnson v. Zerbst, 304 U.S. 458, 465–469 [58 S. Ct. 1019, 1023–1025, 82 L.Ed. 1461]. *However, this does not touch one of those extraordinary cases in which a substantial claim goes to the very foundation of a proceeding, as in* Moore v. Dempsey, 261 U.S. 86 [43 S. Ct. 265, 67 L.Ed. 543]." (Emphasis added.) Brown v. Allen, supra, 344 U.S. at 503, 73 S.Ct. at 444.

Be that as it may, adopting, as the Supreme Court has instructed us, all reasonable inferences against Noia's having waived a fundamental constitutional right, we conclude that relator did not waive his right under the Fourteenth Amendment not to be tried and convicted solely upon his coerced confession. At the time Noia made his choice not to appeal, he had just been convicted by a New York court and jury solely upon the confession which had been wrung from him. But it was not at all clear that Noia could convince an appellate court of the unconstitutionality of his treatment. The police at the trial only admitted to extracting his acknowledgment of guilt by methods far more subtle than brute force.[3] And even if Noia had succeeded in obtaining a reversal, he faced the possibility of a new trial in which he might be convicted again and receive the death penalty instead of life imprisonment. He had just received very shoddy treatment at the hands of the New York police— treatment that he then believed was approved by judicial authorities. Why should he expect a better brand of justice from the same authorities in the future? The posture of his case was far different immediately following the trial from what it is now as a result of the intervening events which we have outlined above. We cannot believe that Noia would consciously and willingly have surrendered his constitutional right had he known then what he knows now: that

3. In denying the writ in the habeas corpus proceeding brought by Noia's codefendant Caminito, the district judge set forth these facts:

"Of course, there are many factors that are disturbing and cause suspicion. The holding of the defendants incommunicado, the sleeping on a hard bench without pillow or blanket in a cell probably not overheated, the failure to arraign without unnecessary delay as provided by law, the admittedly false identifications, the intensive questioning by relays of detectives,—this combination together with the fact that the relator had never been arrested or convicted, would cause hesitation and suspicion on my part. So would the fact that there is little, if any, independent evidence connecting the relator with the commission of the crime. However, the same feelings must have been in the minds of the jurors and they decided the issue in favor of the People after a complete, informative, detailed and conscientious charge." United States ex rel. Caminito v. Murphy, 127 F.Supp. 689, 691–692 (1955). The unconstitutionality of the treatment accorded the three defendants was not established until Caminito appealed the denial of the writ to our court. 222 F.2d 698 (2 Cir. 1955).

there had been an undoubted violation of this right and the rectification of the wrong done him would mean his freedom, not his death. Perhaps Noia should be denied relief for some other reason, which we will discuss presently, but surely not because of any conscious or intentional waiver on his part of a right known to him to have his conviction set aside because that conviction had been obtained by depriving him of a constitutional right.

### Exhaustion of State Remedies

We must now inquire whether relator's failure to appeal his conviction precludes him from relief under the Great Writ because of the requirement in 28 U.S.C. § 2254, quoted above, that a petitioner exhaust his state remedies before seeking federal habeas corpus. In so doing it will be helpful to review the applicable legal history.

Until the year 1867 habeas corpus in the federal courts was, except for rare instances, only available to those detained in federal prisons. In that year, however, as part of its Reconstruction legislation, Congress provided that the United States courts could grant this writ in "all cases where any person may be restrained of his * * * liberty in violation of the constitution, or of any treaty or law of the United States * * *." 14 Stat. 385. With only slight changes in language this statute has come down to the present day as 28 U.S.C. § 2241. This legislation gave the lower federal courts a broad jurisdiction to inquire into the constitutionality of the detention of any prisoner incarcerated pursuant to a conviction in a state court. Ex parte Royall, 117 U.S. 241, 247, 6 S.Ct. 734, 29 L.Ed 868 (1886).

█ But in applying the statute the federal courts were hesitant to reopen matters that had been fully litigated in the state trial and state appellate courts. It was not generally accepted until well

into this century that the federal habeas corpus court had the duty to make an independent review of the details of the procedure accorded the defendant in the state court in order to determine whether he had received due process of law there as required of the states by the Fourteenth Amendment. As late as 1915 the Supreme Court sanctioned a district court's refusal to inquire into the merits of an allegation of mob domination at the relator's trial because the state courts had reviewed this issue fully, first on the defendant's motion for a new trial and again on appeal to the state supreme court. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). A similar approach had been taken by the Court in In re Wood, 140 U.S. 278, 287, 11 S.Ct. 738, 35 L.Ed. 505 (1891) (alternative holding).

Eight years after the decision in Frank v. Mangum, however, in Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923), the Supreme Court clearly recognized the duty of a federal judge to determine for himself whether the petitioner was convicted pursuant to due process of law.[4] Again the allegation was mob domination. The Court stated:

"We assume in accordance with that case that the corrective process supplied by the State may be so adequate that interference by *habeas corpus* ought not to be allowed. It certainly is true that mere mistakes of law in the course of a trial are not to be corrected in that way. But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts have failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoid-

4. This abrupt change in the treatment of habeas corpus cases since the opinion in Frank v. Mangum, rendered in 1915, may have been a result of the statute enacted in 1916, limiting the appellate jurisdiction of the Supreme Court over state court decisions. 39 Stat. 726, 28 U.S.C.A. §§ 1257, 2103; Reitz, supra, at 1328. No longer could all defendants alleging unconstitutional infirmities in their trials in state courts bring their claims as a matter of right to the highest court.

ing an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights.

" \* \* \* We shall not say more concerning the corrective process afforded to the petitioners than that it does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void." Id. at 91, 92, 43 S.Ct. at 266, 267.

Ever since that momentous decision the Supreme Court has continued to subject the administration of state criminal justice to the independent inquiry of federal courts pursuant to a petition for habeas corpus. E. g., Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953). And, through the years, in this review of state trials, the United States courts have developed an ever expanding concept of due process. See Darr v. Burford, 339 U.S. 200, 221, 70 S.Ct. 587, 94 L.Ed. 761 (1950) (Frankfurter, J., dissenting), Reitz, supra, at 1329.

Meanwhile, the federal courts in habeas corpus cases were also developing another theory, this one being calculated to reduce the instances of federal habeas corpus review of state convictions. This was the requirement that a prisoner incarcerated pursuant to a state conviction exhaust his available state remedies before he seek relief under federal habeas corpus. Nineteen years after the passage of the habeas corpus statute which was to become 28 U.S.C. § 2241, the Supreme Court handed down the first opinion expounding the requirement that a habeas corpus petitioner first exhaust his state remedies. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In that case it was held that the federal court in its discretion might withhold the federal writ when the defendant sought it before his trial in the state court. See also United States ex rel. Drury v. Lewis, 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343 (1906). By way of dictum in the Royall case, the Court also recognized that, even when federal habeas corpus was sought after trial in the state court, the federal court could, in the proper exercise of its discretion, withhold the writ so as to require the petitioner to carry his case through the state appellate system and thereafter to bring a writ of error in the U. S. Supreme Court. In accordance with this dictum the Court, that same term, denied an original petition brought after trial but before the petitioner had appealed to the state supreme court. Ex parte Fonda, 117 U.S. 516, 6 S.Ct. 848, 29 L.Ed. 994 (1886). The United States Supreme Court found no obstacle preventing the defendant in that case from first appealing to the highest court of the state and then, if the ultimate state decision were adverse, seeking review of that court's determination by writ of error. Other cases in which the Court placed a similar duty upon the defendant were United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138 (1925); In re Wood, 140 U.S. 278, 289–290, 11 S.Ct. 738, 35 L.Ed. 505 (1891) (alternative holding); In re Frederich, 149 U.S. 70, 13 S.Ct. 793, 37 L.Ed. 653 (1893); People of State of New York v. Eno, 155 U.S. 89, 15 S.Ct. 30, 39 L.Ed. 80 (1894); Whitten v. Tomlinson, 160 U.S. 231, 16 S.Ct. 297, 40 L. Ed. 406 (1895); Baker v. Grice, 169 U. S. 284, 18 S.Ct. 323, 42 L.Ed. 748 (1898); Tinsley v. Anderson, 171 U.S. 101, 18 S. Ct. 805, 43 L.Ed. 91 (1898); Davis v. Burke, 179 U.S. 399, 21 S.Ct. 210, 45 L. Ed. 249 (1900); Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760 (1907); cf. Riggins v. United States, 199 U.S. 547, 26 S.Ct. 147, 50 L.Ed. 303 (1905); Glasgow v. Moyer, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147 (1912).

In Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the Supreme Court added a further requirement to that of fully carrying forward a state appeal, the requirement that, before seeking relief under federal habeas cor-

pus, a petitioner exhaust the collateral remedies still open to him in the state courts, such as the state writ of habeas corpus. See also Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944) (per curiam); Ex parte Botwinski, 314 U.S. 586, 62 S.Ct. 476, 86 L.Ed. 473 (1942); Ex parte Davis, 317 U.S. 592, 63 S.Ct. 26, 87 L.Ed. 484 (1942). And the necessity of appealing from the denial of any of these state collateral remedies before bringing a petition for federal habeas corpus was announced in Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868 (1943) (per curiam).[5]

The Supreme Court recognized, however, that exceptional cases might be presented in which the petitioner's duty to exhaust available state remedies would be excused and the federal court could forthwith entertain the petition for the Great Writ. Such was the famous case of In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890). The petitioner there, a United States marshal, was imprisoned by the sheriff of San Joaquin County, California, on a charge of murder, because he had shot and killed one David S. Terry in the performance of the marshal's federally imposed duty to protect the life of Mr. Justice Field of the United States Supreme Court. Neagle sought release under the federal writ well in advance of trial in the state court. Counsel for the State of California asserted that an issuance of the writ of habeas corpus would deprive the state of its right to try the defendant for the crime charged. The Supreme Court (Field, J., not sitting), nevertheless affirmed the United States Circuit Court· for the Northern District of California, which had issued the writ of habeas corpus and had ordered the discharge of the prisoner. In re Loney, 134 U.S. 372, 10

S.Ct. 584, 33 L.Ed. 949 (1890) was another exceptional case. There also the petitioner was discharged under the Great Writ from state detention before trial. The defendant was incarcerated awaiting trial in a state court on a charge of perjury in that he allegedly gave false testimony before a notary public regarding the contested election of a member of Congress. In upholding an issuance of the federal writ, the Supreme Court held that the state court had no jurisdiction to entertain an action so inseparably connected with the functioning of the National Government. Another case of the exceptional type was Wildenhus' Case, 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565 (1887). In that case the Court, upon a petition for federal habeas corpus prior to trial in the state court, decided the question whether the arrest of a foreign crewman by state officers was contrary to the provisions of a treaty between this country and the Kingdom of Belgium. The Court held that the arrest did not violate the treaty. It has been said that the exceptional character of these three cases, which permitted the by-passing of the state remedial processes, was that they involved either the operations of the federal government or its relations with other nations. Whitten v. Tomlinson, supra, 160 U.S. at 241, 16 S.Ct. 297.

In 1944 in the well-known per curiam opinion of Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944), the Supreme Court set forth the exhaustion doctrine as it stood at the end of its pre-statutory development. The Court stated:

"Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all ap-

5. Apparently it was only necessary for the incarcerated defendant to apply for one post-conviction remedy even if several were available in the state system, and he did not have to make repetitious applications for the same remedy even though this was permitted under state law. . See Brown v. Allen, supra, 344 U.S. at 448–

450 & n. 3, 73 S.Ct. 397. However, he was required to seek direct review of his conviction in the United States Supreme Court. See Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). But see Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948).

pellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted." 321 U.S. at 116–117, 64 S.Ct. at 450.

" * * * But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, see Mooney v. Holohan, supra, [294 U.S.] 115 [55 S.Ct. 343, 79 L.Ed. 791, 98 A.L.R. 406], or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, cf. Moore v. Dempsey, 261 U.S. 86 [43 S.Ct. 265, 67 L.Ed. 543]; Ex parte Davis, 318 U.S. 412 [63 S.Ct. 679, 87 L.Ed. 868], a federal court should entertain his petition for habeas corpus, else he would be remediless." 321 U.S. at 118, 64 S.Ct. at 450.

See, also, White v. Ragen, 324 U.S. 760, 767, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); Marino v. Ragen, 332 U.S. 561, 564, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (Rutledge, J., concurring); Wade v. Mayo, 334 U.S. 672, 679, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948); Young v. Ragen, 337 U.S. 235, 238, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949); Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950).

As part of the recodification of the Judicial Code in 1948 Congress added section 2254, quoted above, which gave statutory recognition to the exhaustion doctrine as it had been developed in the case law. The statutory revisor's notes acknowledged:

"This new section is declaratory of existing law as affirmed by the Supreme Court. (See Ex parte Hawk, 1944, 64 S.Ct. 448, 321 U.S. 114, 88 L.Ed. 572.)"

H.R.Rep. No. 308, 80th Cong., 1st Sess. A180 (1947); see Young v. Ragen, supra, 337 U.S. at 238 n. 1, 69 S.Ct. 1073; Darr v. Burford, supra, 339 U.S. at 210–211, 70 S.Ct. 587; Irvin v. Dowd, 359 U.S. 394, 405, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959). See also S.Rep. No. 1559, 80th Cong., 2d Sess. 9 (1948); Hearings on H.R. 3214 Before a Subcommittee of the Senate Judiciary Committee, 80th Cong., 2d Sess. 28 (1948).

In the light of the case law incorporated into the statute, does Noia's failure to appeal preclude him from federal habeas corpus relief because of the exhaustion requirement in section 2254? The language of that section appears only to require a state prisoner to exhaust those state remedies presently open to him before seeking federal habeas corpus. It does not suggest that federal habeas corpus relief has been forfeited because of a failure to utilize some state remedy available in the past but which is no longer available. The statute speaks of "remedies available in the courts of the State," "an absence of available State corrective process or the existence of circumstances rendering such process ineffective," and "if he has the right under the law of the State to raise, by any available procedure, the question presented."

The Supreme Court did not announce a concept of forfeiture in the case law development of the exhaustion doctrine. In the leading case of Mooney v. Holohan, supra, the Supreme Court declared:

"We do not find that petitioner has applied to the state court for a writ of *habeas corpus* upon the grounds stated in his petition here. That corrective judicial process has not been invoked, and it is not shown to be unavailable." 294 U.S. at 115, 55 S.Ct. at 343.

And in Ex parte Hawk, supra, the case heralding section 2254, it seems clear that the Court was referring to currently available remedies, not a forfeiture of the petitioner's right to federal habeas corpus for failing to resort to previously available state remedies. In that case it was stated:

"But, as was pointed out by the District Court and Circuit Judge, petitioner has not yet shown that he has exhausted the remedies available to him in the state courts, and he is therefore not at this time entitled to

relief in a federal court or by a federal judge.

\* \* \* \* \* \*

"Until [coram nobis in the state courts] has been sought without avail we cannot say that petitioner's state remedies have been exhausted.

\* \* \* \* , \* \*

"As petitioner does not appear to have exhausted his state remedies his application will be denied without prejudice to his resort to the procedure indicated as appropriate by this opinion." 321 U.S. at 116, 118, 64 S.Ct. at 449.

Noted authority has maintained that in every case in which the Supreme Court upheld a dismissal of the writ because of a failure to exhaust state remedies, a state remedy was available at the time the prisoner sought federal habeas corpus. But see Ex parte Spencer, 228 U.S. 652, 660, 33 S.Ct. 709, 57 L.Ed. 1010 (1913). It is conceded, however, that a forfeiture, to which the Supreme Court never alluded in any of its opinions, might have resulted, in some cases, through the running of the period for the alternative remedy during the pending habeas corpus proceedings. Hart, The Supreme Court, 1958 Term: Foreword: The Time Chart of the Justices, 73 Harv.L.Rev. 84, 113 n. 85 (1959).

Judge Parker, the Chairman of the Judicial Conference Committee that drafted the Habeas Corpus Act of which section 2254 was a part, has disclosed that the purpose of the section was to foreclose resort to federal habeas corpus only when relief was still available in the state system. He said the following:

"One of the incidents of the state remedy is [the] right to apply to the Supreme Court for certiorari. If a petitioner has failed to make such application after the refusal of the state court to release him, he cannot be said to have exhausted the remedies available to him under state procedure, *provided he has the right to apply again to the state courts for relief as a basis for application to the Supreme Court for certiorari.*

\* \* \* \* \* \*

"The fact that certiorari from the Supreme Court to the state court may be called a federal remedy is not determinative of the question here involved. *The crucial matter is that petitioner still has a right to attack in the courts of the state the validity of his conviction and, upon the record made in such attack, to petition the highest court of the land for a review. So long as such right remains,* he does not have, and ought not have, the right to ask a review by one of the lower federal courts." (Emphasis added.) Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171, 177 (1949), quoted in Darr v. Burford, supra, 339 U.S. at 212, n. 34, 70 S.Ct. at 594.

■ It is plausible to interpret the doctrine of exhaustion of state remedies simply to mean that when both the state and the federal courts are available to a particular state prisoner he should go into the state court first. See Hart, supra, at 113. If such is the proper interpretation, section 2254 is no bar to Noia's present petition for federal habeas corpus. He has exhausted the only remedy in the state courts currently available to him, a proceeding in the nature of *coram nobis.*[6]

■■ But we cannot assert with confidence that section 2254 only refers to present state remedies. Language in certain recent Supreme Court decisions indicates that interpreting the section to apply only to the exhaustion of presently available remedies would be erroneous. Irvin v. Dowd, 359 U.S. 394, 404–406, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959); Daniels v. Allen, reported sub nom. Brown v. Allen, 344 U.S. 443, 486, 73 S.Ct. 397,

6. Although Noia could apply again for *coram nobis* relief in the New York courts, he is not required to do so before seeking federal habeas corpus. See

footnote 5, supra, Brown v. Allen, supra, 344 U.S. at 448–450 & n. 3, 73 S.Ct. at 397.

437, 97 L.Ed. 469 (1953). See also United States ex rel. Kozicky v. Fay, 248 F.2d 520 (2 Cir., 1957). Assuming that section 2254 does indeed express a forfeiture of federal habeas corpus protection as a result of a past failure to utilize a particular state remedy, Noia would still go free, if his case is sufficiently exceptional. The statutory section attempted only to codify the existing law of exhaustion developed by the courts. As we pointed out earlier, the pre-statutory case law on exhaustion did not provide a rigid bar to habeas corpus relief: rather, it recognized exceptional situations permitting the immediate issuance of the federal writ. The language of the statute contemplates that such unusual circumstances can occur when it speaks of "circumstances rendering [state] process ineffective to protect the rights of the prisoner." We quote from the Supreme Court's opinion in Darr v. Burford, supra:

> "Ex parte Hawk prescribes only what should 'ordinarily' be the proper procedure; all the cited cases from Ex parte Royall to Hawk recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case. The exceptions are few but they exist. Other situations may develop. Compare Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist 'circumstances rendering such [state] process ineffective to protect the rights of the prisoner.' 28 U.S.C. § 2254." 339 U.S. at 210, 70 S.Ct. at 593.

The Court in Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) likewise recognized the possibility of unusual circumstances allowing a by-passing of the state channels of review. Mr. Justice Black stated for a unanimous Court:

> "As explained in Darr v. Burford, 339 U.S. 200, 210 [70 S.Ct. 587, 593, 94 L.Ed. 761], this general rule is not rigid and inflexible; district courts may deviate from it and grant relief in special circumstances. Whether such circumstances exist calls for a factual appraisal by the court in each special situation. Determination of this issue, like others, is largely left to the trial courts subject to appropriate review by the courts of appeals." 342 U.S. at 520–521, 72 S.Ct. at 511.

We believe that if there are facts in a case so unique as to make an independent state ground of decision, elsewhere reasonable and adequate, inadequate in that particular case to bar federal habeas corpus, those facts are likewise sufficient to create an exceptional case within the contemplation of section 2254 so as to permit the issuance of the federal habeas corpus writ. Therefore, we have postponed a discussion of the exceptional nature of Noia's case until our consideration of the adequate and independent state ground concept, a concept particularly involved here, and which we now discuss.

### The Independent and Adequate State Ground of Decision

The presence of an independent and adequate state ground for the decision supporting Noia's detention would be sufficient basis for depriving him of his freedom quite apart from the federal Habeas Corpus Act or any other federal statute. The concept of the independent and adequate state ground originated in cases involving direct review of state court decisions by the United States Supreme Court. Murdock v. Memphis, 20 Wall. 590, 634–636, 87 U.S. 590, 634–636, 22 L.Ed. 429 (1875).[7] In dealing

---

7. Mr. Justice Frankfurter, dissenting in Irvin v. Dowd, supra, said of the Murdock opinion:

"This decision has not unjustifiably been called one of 'the twin pillars' (the other is Martin v. Hunter's Lessee, 1 Wheat. 304, [4 L.Ed. 97]) on which have been built 'the main lines of demarcation between the authority of the state legal systems and that of the federal system.'

with this concept upon direct review by the U. S. Supreme Court of a state decision, where the decision of the highest state court rests upon two grounds, one federal, the other non-federal, the Supreme Court has taken the position that it is pointless for it to pass on the federal issue inasmuch as the result reached by the state court can stand inviolate on the state ground regardless of the outcome reachable on the federal point.[8] It would be a clear infringement of state prerogatives for the U. S. Supreme Court to ignore the state ground and to command the result which would have been followed had there just been a federal question in the case. By an "independent" state ground is meant one in which no elements of federal law are present. The state ground in the present case, failure to appeal, is clearly an independent ground; therefore we shall not concern ourselves further with this requirement.[9] But the meaning of the requirement that the state ground be "adequate" is crucial to our analysis of the present case and will be discussed at greater length below. To illustrate the doctrine of an independent and adequate state ground in the sphere of direct federal review, let us suppose that the highest state court holds a contract to be void for lack of consideration and invalid because it violates the Sherman Anti-Trust Act. The Supreme Court would decline to review the federal anti-trust question because the result reached by the state courts is fully supportable on the non-federal ground of lack of consideration.

Cf. Fox Film Corp. v. Muller, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935).

The next step in our analysis is to recognize that the state ground that is independent and adequate need not be a substantive law ground, but can be a rule of state procedure. See, e. g., Herndon v. Georgia, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530 (1935). In most cases a failure to raise or preserve federal questions in accordance with the established state procedure will result in a loss of the right to present these issues to the U. S. Supreme Court because federal review of federal issues is cut off by an independent and adequate state *procedural* ground for decision. E. g., Edelman v. California, 344 U.S. 357, 73 S.Ct. 293, 97 L.Ed. 387 (1953). For example, if a party fails to appeal from an adverse judgment within a certain time limit that judgment will become final as a matter of state procedural law. If despite failure timely to appeal the losing litigant nevertheless seeks review in the U. S. Supreme Court, that Court will probably answer him that, regardless of his federal contentions, the result in the trial court must stand because of the state rule of procedure. As is true for state substantive rules, of course the state procedural rules have to meet the requirement of adequacy if they are to cut off Supreme Court determination of the federal issues.

With this background of the application of the doctrine in cases of direct review, we move to its relevance in federal habeas corpus proceedings. Daniels

Hart, The Relations Between State and Federal Law, 54 Col.L.Rev. 489, 503–504." (359 U.S. at 408, 79 S.Ct. at 833).

8. The formulation of the Court in California Powder Works v. Davis, 151 U.S. 389, 393, 14 S.Ct. 350, 38 L.Ed. 206 (1894) has become classic:
"It is axiomatic that, in order to give this court jurisdiction on writ of error to the highest court of a state in which a decision in the suit could be had, it must appear affirmatively, not only that a federal question was presented for decision by the highest court of the state hav-

ing jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided or that the judgment, as rendered, could not have been given without deciding it. And where the decision complained of rests on an independent ground, not involving a federal question and broad enough to maintain the judgment, the writ of error will be dismissed by this court without considering any federal question that may also have been presented."

9. For a case involving a non-independent state ground, see Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S. Ct. 243, 65 L.Ed. 577 (1921).

v. Allen, supra, 344 U.S. at 482–486, 73 S.Ct. at 397 instructs us that the doctrine also applies in habeas corpus cases. Mr. Justice Frankfurter, dissenting in Irvin v. Dowd, supra, stated the same proposition, and none of the Court disagreed.

"The problem presented by this case is as old as the Union and will persist as long as our society remains a constitutional federalism. It concerns the relation of the United States and the courts of the United States to the States and the courts of the States. The federal judiciary has no power to sit in judgment upon a determination of a state court unless it is found that it must rest on disposition of a claim under federal law. This is so whether a state adjudication comes directly under review in this Court or reaches us by way of the limited scope of habeas corpus jurisdiction originating in a District Court." 359 U.S. at 407–408, 79 S.Ct. at 833.

As we see, the concept is just as important in cases of federal habeas corpus for state prisoners as it is when there is direct federal review of state court decisions. Just as it would be an encroachment on the prerogatives of the state for the Supreme Court upon direct review to disregard the state ground, equally—if not more so—would it be a trespass against the state for a lower federal court, upon a petition for habeas corpus, to disregard the state ground in granting relief to the prisoner. This is our federal system in operation. In such a system certain matters are reserved for governance by the states, other matters are to be determined according to federal law. And in such a system of government, where two sovereignties function within the same territorial boundaries, cases, such as the present one, will inevitably arise in which the law of both governments will be relevant and will have to be accommodated.

 Since we have shown that an adequate state ground of decision will preclude relief under federal habeas cor-

pus, the question we must face is whether Noia's failure to appeal his conviction is a state procedural ground adequate to bar his path to freedom under the federal writ. This question of adequacy is one to be determined by federal law. Staub v. City of Baxley, 355 U.S. 313, 318–319, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); see Rogers v. Alabama, 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417 (1904). Actually, in describing the state ground the term "adequate" embraces two dimensions of adequacy. First the state ground must be sufficiently broad-based to support the total result reached by the state court—here the relator's conviction and sentence. The state ground in the present case clearly satisfies this part of the requirement of adequacy. The second part of the requirement is that the state ground be free from certain infirmities so that it will justify a foreclosing of consideration of the federal issues involved in the case. This part of the requirement of adequacy is better understood through explanation than through definition. There are at least four ways in which the state ground can be considered inadequate, with the result that the federal court can consider the merits of the federal issue. First, if the state ground is interjected into a case and relied upon by the state court in order *to evade* the federal question, the state ground is inadequate. Rogers v. Alabama, supra, at 231, 24 S.Ct. 257 (1904); Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923); Ellis v. Dixon, 349 U.S. 458, 463, 75 S.Ct. 850, 99 L.Ed. 1231 (1955); see Atlantic Coast Line R. R. v. Mims, 242 U.S. 532, 37 S.Ct. 188, 61 L.Ed. 476 (1917). There is no suggestion here that the state, by relying upon the defendant's failure to appeal his conviction, was doing so in order to evade its obligations under federal law. Second, if the state rule were applied so as *to discriminate* against this particular prisoner, we could say that the state ground for decision was inadequate. Cf. Reitz, supra, at 1337 n. 86, 1341. But no discrimination has been practiced here,

as any other prisoner who did not appeal would also be barred from relief. Third, if the state rule in question were found by the federal court *not to have fair and substantial support* in state law, the rule could be termed inadequate. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Ward v. Board of County Com'rs, 253 U.S. 17, 22, 40 S.Ct. 419, 64 L.Ed. 751 (1920); see Patterson v. Alabama, 294 U.S. 600, 604–605, 55 S.Ct. 575, 79 L.Ed. 1082 (1935). But there appears to be sufficient support for the state rule in this case. See People v. Rizzo, 246 N.Y. 334, 158 N.E. 888, 55 A.L.R. 711 (1927); People v. Sadness, 300 N.Y. 69, 89 N.E. 2d 188, cert. denied, 338 U.S. 952, 70 S.Ct. 483, 94 L.Ed. 587 (1950); People v. Kendricks, 300 N.Y. 544, 89 N.E.2d 257 (1949). Finally, even if there is no intention to evade the rights of the prisoner guaranteed to him by federal law, but the state procedural rule nevertheless *is an unreasonable bar* to the effectuation of federal rights, the Supreme Court has declared the state ground must not prevail. Davis v. Wechsler, 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143 (1923); Williams v. Georgia, 349 U.S. 375, 399, 75 S.Ct. 814, 99 L.Ed. 1161 (1955) (dissenting opinion); see Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); National Mutual Bldg. and Loan Ass'n v. Brahan, 193 U.S. 635, 24 S.Ct. 532, 48 L.Ed. 823 (1904); cf. Ellis v. Dixon, 349 U.S. 458, 463, 75 S.Ct. 850, 99 L.Ed. 1231 (1955). However, in the general run of cases no state rule of procedure is more reasonable or fair than that a conviction becomes final upon the defendant's failure to appeal, provided, of course, that he was under no handicap at the time of his conviction which prevented him from noting the appeal.

Thus we come to the last scene in this human drama. Is there an adequate state ground in this case dooming relator to life imprisonment? Our answer is No; the state ground here is inadequate. We must realize that adequacy is a term of relativity. No state ground is entitled to unqualified deference. As we noted in the last paragraph, for the state ground to be adequate, it must be reasonable.

Earlier in the opinion we pointed out that the Supreme Court in habeas corpus cases has consistently recognized that extraordinary circumstances might arise which would permit recourse to the federal writ even though certain state procedures were by-passed. We do not believe that the Court has expressed in those cases a closed list of exceptions. See Frisbie v. Collins, 342 U.S. 519, 520–521, 72 S.Ct. 509, 96 L.Ed. 541 (1952). We recall that the Court in Darr v. Burford, supra, said: "The exceptions are few but they exist. Other situations may develop." 339 U.S. at 210, 70 S.Ct. at 593.

In determining whether the relevant state ground is a reasonable bar to federal rights—or whether the case is sufficiently exceptional so as to excuse an earlier omission of a state procedure —the federal court should consider the clarity and the magnitude of the substantive federal right violated. The reasonableness, and hence the adequacy, of the state procedural bar, is inversely proportionate to the importance of the federal right and the clarity of its violation. Even in the case of Frank v. Mangum, supra, which in certain respects announced a very limited, now obsolete, scope for federal habeas corpus, the Court asserted:

"[T]he due process· of law guaranteed by the 14th Amendment has regard to substance of right, and not to matters of form or procedure; * * * it is open to the courts of the United States upon an application for a writ of *habeas corpus*, to look beyond forms and inquire into the very substance of the matter, to the extent of deciding whether the prisoner has been deprived of his liberty without due process of law, and for this purpose to inquire into jurisdictional facts, whether they appear upon the record or not * *."

237 U.S. at 331, 35 S.Ct. at 589, 59 L.Ed. 969.

We hasten to add that we are not suggesting that a district judge should make a full review of the substantive federal issue at the outset of each habeas corpus proceeding in order to determine the adequacy of a state ground which the state asserts to be present. Such an interpretation would make the concept of an adequate state ground meaningless in practice. We do assert, however, that if, as a result of a peculiar turn of events, it is obvious without detailed inquiry that a prisoner has been deprived of a significant federal right, the federal judge, in passing on the adequacy of an asserted state procedural bar, should give great weight to the clear violation of that federal right. Cf. Darr v. Burford, supra, 339 U.S. at 202, 218, 70 S.Ct. 587, 94 L.Ed. 761. And if it should further appear without extended inquiry that the vindication of the prisoner's significant federal right would be almost certain to result in his freedom instead of the long confinement to which he was sentenced, it would be difficult indeed to conceive of any procedural miscue great enough to justify the court's refusal to look at the posture of the substantive case. Let us consider the reason why a state procedural ground is entitled to the respect it receives. It is that the state has a right to administer its criminal justice in an orderly fashion. Ex parte Spencer, supra, 228 U.S. at 660, 33 S.Ct. 709, 57 L.Ed. 1010. This is to assure to the state and all the defendants on a crowded criminal docket that each case will be afforded fair, full, and equal treatment. Innocent defendants must occasionally suffer along with the guilty ones in order to support this end. The progress of criminal justice cannot be made to stop in order to re-examine the contentions of every convicted defendant, once he has placed him-

self outside the channels of a fair state appellate review. If this were not so, the disruptions and confusion created by perpetual and irregular reconsideration of those claims would result in insufficient attention to the bona fide assertions of those who have complied with the procedural rules. It is not inconsistent with our notions of justice to let some innocent persons suffer for failure to be vigilant in the protection of their rights when we cannot identify who the innocent ones are. But when the unusual case arises in which at the very outset it is obvious that on the substantive merits, as distinct from the procedural lapse, the prisoner should not be imprisoned, and those merits are of constitutional magnitude, any explanation advanced for the purpose of justifying the prisoner's continued detention is much less convincing. But, as we pointed out above, fortunately the presence of an independent state ground is not always an absolute bar to the vindication of rights guaranteed by the federal Constitution. Even in our federal form of government in which the states make their own rules of procedure, we do not lose sight of the fact that the purpose of all procedure is to determine and effectuate substantive rights, and not the reverse. There is no more unenlightened or cruel anachronism than an unbending reliance upon the niceties of procedure in derogation of substantive rights. Procedures exist, or ought to exist, for the purpose of effectuating rights, not of denying them. Cf. Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 45, 51 (1939), aff'd 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940). When the substantive rights are clear we should be most hesitant to sacrifice those rights on the altar of local practice.[10]

We consider the posture of Noia's case in the light of the principles discussed above. The right of the

---

10. Cf. Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143 (1923) (Holmes, J.):

"Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice."

defendant to be tried without the introduction into evidence of a confession wrung from him against his will is a constitutional right of the greatest magnitude. In fact, since the confession constituted the sole basis for conviction, it can be said that this unconstitutional deprivation presented "a substantial claim [going] to the very foundation of a proceeding." Brown v. Allen, 344 U.S. 443, 503, 73 S.Ct. 397, 437, 444, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). And there is no doubt but that the confession of this prisoner was in fact coerced. We quote from the opinion of the district court below:

> "[T]here is no proceeding available to him in the State, apart, of course, from executive clemency, which can effect his release from a patently unconstitutional detention.
>
> * * * * * *
>
> "Even a cursory reading of the opinion of the Court of Appeals for the Second Circuit in the Caminito case (222 F.2d 698) indicates that all of the defendants were coerced, and the Court of Appeals of the State of New York in the Bonino case has recognized this (1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51)." 183 F.Supp. at 225 & n. 3.

 If it were not enough that this relator's present detention obviously rests upon a violation of his constitutional right to a trial by due process of law, it is also virtually certain that Noia would remain free if he were ever released. Often the setting aside of a prisoner's conviction because of trial defects merely results in a new trial in which he is convicted again under proper procedures; but the strange turn of events in this case appears to make it unlikely that relator would again be convicted. We quote again from the district judge:

> "[M]y dismissal of the writ leaves one codefendant incarcerated for the term of life imprisonment while the other two codefendants, convicted

on the basis of precisely the same coercion, are virtually scot free.

> * * * * * *
>
> Even though Bonino and Caminito still remain under indictment it is most highly improbable that they will ever be tried again since the State presented no evidence but the presently unavailable coercion [sic] confessions in 1942. The obtaining of new evidence would appear at this late date impossible. See People v. Caminito, 4 A.D.2d 697, 163 N.Y.S. 2d 699." 183 F.Supp. at 227 & n. 6.

The coincidence of these factors: the undisputed violation of a significant constitutional right, the knowledge of this violation brought home to the federal court at the incipiency of the habeas corpus proceeding so forcibly that the state made no effort to contradict it, and the freedom the relator's codefendants now have by virtue of their vindications of the identical constitutional right leads us to conclude that the state procedural ground, that of a simple failure to appeal, reasonable enough to prevent federal judicial intervention in most cases, is in this particular case unreasonable and inadequate. The unique fact pattern in this case is such that few prisoners will find the release of Noia to have any applicability to their situations. Be that as it may, it still does not sit well on the consciences of civilized men that a man should spend the rest of his life in confinement when it is patent to all that the only reason for the detention is that he did not timely appeal his conviction.

We find no precedent that compels us to deny relator's petition. There are two leading cases in which the Supreme Court, because the petitioners failed to take certain steps in the state appellate process, has refused to consider their contentions upon habeas corpus that their convictions were unconstitutionally obtained. These cases are Daniels v. Allen, supra, and Darr v. Burford, supra. In the Daniels case the allegations of unconstitutional treatment embraced discrimination in the jury lists, coerced confes-

[redacted]

sions, the procedure by which the state court determined the voluntariness of the confessions, and the refusal of the state court to entertain the relator's other constitutional claims. It was far from clear at the outset of the habeas corpus proceeding in that case that there was *any merit in the relator's contentions.* In fact, in the case of Brown v. Allen, decided contemporaneously with Daniels v. Allen, and appealed from the same state, North Carolina, the Supreme Court held that there was no unconstitutional discrimination in the selection of jury panels. Likewise, in Darr v. Burford, the merits of the relator's federal contentions had not been judicially examined or settled at the time of his habeas corpus petition, or even later. His contentions were lack of counsel and inability adequately to prepare his defense.

In a third case, Michel et al. v. Louisiana, supra, the petitioners alleged they had been denied due process because of the systematic exclusion of Negroes from the grand jury panels. A majority of the Supreme Court refused to consider this constitutional contention because each petitioner had failed, as required by a Louisiana statute, to file a motion in the state court challenging the composition of his particular grand jury before the third judicial day following the end of that grand jury's term. Though Mr. Justice Black, in dissent, announced that it was undisputed that only once in people's memory had a Negro ever been selected as a grand juror in the particular parish involved, this fact was not referred to in the majority opinion. Michel is distinguishable from our case, for in discussing the petition of one of the three defendants whose petitions were heard together, the majority of the Court stated that Louisiana had introduced at trial admissible evidence against the defendant which was likely to be unavailable to the state if a retrial were to be ordered. 350 U.S. at 99, 76 S.Ct. 158, 100 L.Ed. 83. In our case, on the other hand, the only evidence which the state put in or could have offered against Noia at the time of his trial, his coerced confession, was inadmissible.

The leading cases in which we of the Second Circuit have refused to entertain the relator's federal contentions because of a prior failure to pursue a complete journey through the state appellate system were United States ex rel. *Williams* v. LaVallee, 276 F.2d 645 (2 Cir. 1960) and United States ex rel. Kozicky v. Fay, 248 F.2d 520 (2 Cir. 1957). In the Williams case the relator alleged a coerced confession, but it was no more than allegation in his petition when Williams sought federal habeas corpus. In Kozicky, similarly, the allegation was a coerced confession, but, likewise, there was no certainty at the outset of the habeas corpus proceeding, as there is in the present case, that the relator there had truly been coerced.

On the other hand, we are led to conclude from our review of the cases in the U. S. Supreme Court in which it was obvious from the undisputed facts on appeal that an important federal right had been denied a defendant in a state court, and assertion was made that the defendant had not complied with applicable state procedure so as to avail himself of the federal right, the Supreme Court has not hesitated to afford some form of relief to the appellant.

Patterson v. Alabama, 294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082 (1935), a case that reached the U. S. Supreme Court from a state supreme court on a writ of certiorari, involved facts very similar to those in the instant case. Patterson and one Clarence Norris, Negroes, were indicted and convicted of rape in an Alabama state court. Norris asserted a denial of the equal protection of the laws as guaranteed to him by the Fourteenth Amendment on the ground that Negroes had been systematically excluded from jury service. As Caminito, in the present series of cases, Norris properly preserved his Fourteenth Amendment objection through the state proceedings; and in Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935), the United States Supreme Court reversed

his conviction because of this deprivation of his constitutional right. Meanwhile, Patterson was trying to assert the same right. He had been tried separately from, but at the same time as, Norris, and upon the same facts. Thus, it was clear that Patterson, as Norris, had been denied his constitutional right to equal protection of the laws. But Patterson's attorney had not made a motion for a new trial or filed his bill of exceptions within the requisite time limits under Alabama law; and so the state supreme court refused to consider Patterson's contentions that his rights under the federal Constitution had been denied him. The U. S. Supreme Court dealt with whether these Alabama state procedural rules presented an adequate non-federal ground to sustain Patterson's conviction and foreclose adjudication upon Patterson's federal right. 294 U.S. at 602, 55 S.Ct. 579. Mr. Chief Justice Hughes, for a unanimous court, reversed the Alabama conviction and remanded the case to the state courts. He emphasized the exceptional situation presented by a reversal of the conviction of Patterson's associate on constitutional grounds, a reversal that made it clear that Patterson too had been denied his constitutional right. The Court concluded that upon remand the state court might well hold that it had power to entertain Patterson's federal contentions. In the Patterson litigation the Supreme Court remanded for further state court consideration. Such a disposition was appropriate in that case. The remand secured the constitutional right to the petitioner with the slightest possible interference with the state's procedures.[11] Such a course is not open to us; we can only remand to the district court with instructions to issue the Great Writ. But the Supreme Court's opinion in Patterson teaches us one important truth crucially relevant to the case before us. In passing upon the adequacy of a state procedural ground asserted as a bar to a federal adjudication upon a clear violation of a federal right, the Supreme Court will consider whether the alleged violation of the federal right has already been fully proved and therefore undeniably demonstrated.

A similar case was Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955), also before the Supreme Court through the grant of a writ of certiorari to review directly the decision of a highest state court. After conviction for murder and while under sentence of death, the petitioner, a Negro, filed an extraordinary motion in the state trial court for a new trial on the ground of unconstitutional discrimination against Negroes in the selection of a jury panel, but the state courts refused to entertain the motion because the defendant had not objected to the jury panel before trial. However, six months before Williams' motion was filed in the Georgia court, the United States Supreme Court had decided another case in which it had declared that the method of selecting jury panels in Georgia was unconstitutional upon the ground asserted by Williams. Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). In fact, upon oral argument before the U. S. Supreme Court in Williams, the state conceded that Williams had been deprived of his constitutional right. Thus, the Supreme Court was again faced with the kind of problem presented in Patterson, on the one hand a clear violation of a constitutional right, but, on the other, a failure to follow one of the procedural rules of the relevant state. The Supreme Court concluded that it should pass upon the violation of the federal rights of the petitioner.

> "We conclude that the trial court and the State Supreme Court declined to grant Williams' motion though possessed of power to do so under state law. Since his motion was based upon a constitutional objection, and one the validity of which

11. Patterson was retried and, apparently with the constitutional defect cured, was again convicted. Patterson v. State, 234 Ala. 342, 175 So. 371 (1937).

has in principle been sustained here, the discretionary decision to deny the motion does not deprive this Court of jurisdiction to find that the substantive issue is properly before us." 349 U.S. at 389, 75 S.Ct. at 822.

Believing it wiser, however, to remand the case to the state courts for reconsideration of the procedural ground used there to bar petitioner, the Supreme Court followed a course similar to that which it followed in Patterson v. Alabama, supra. Initially in Williams, whether to grant the defendant's motion for a new trial was within the discretion of the Georgia trial court. And the Supreme Court decision in Avery was before that Georgia court when it first considered Williams' motion. But even though the state judgment was one within judicial discretion and whether to exercise that discretion would normally have been strictly a matter of state procedural law, nevertheless, Mr. Justice. Frankfurter, for the majority of the Supreme Court, announced that federal courts could entertain the federal issues.

Finally, we mention New York Cent. R. R. v. New York & Pennsylvania Co., 271 U.S. 124, 46 S.Ct. 447, 70 L.Ed. 865 (1926). In that case the Public Service Commission of Pennsylvania held that the railroad had excessively charged the shipper and ordered the railroad to repay the amount of the excess. The Supreme Court of Pennsylvania affirmed the order and the railroad sought review by the U. S. Supreme Court. But under section 208(a) of the Transportation Act of 1920, 41 Stat. 464, it was obvious that this order was impermissible without the approval of the Interstate Commerce Commission, which had not been granted. Nevertheless, the shipper ar-

gued, and the state courts agreed, that the railroad had waived its rights under section 208(a) by not appealing a similar earlier decision of the Public Service Commission to the Pennsylvania Supreme Court. Stressing the clarity of the substantive point, Mr. Justice Holmes for a unanimous Court reversed the judgment of the state court, thus vindicating the federal right despite the state procedural point.[12]

## Conclusion

The importance of this litigation has led us to consider more than the single issue presented to us on appeal—that of the proper interpretation of the language of 28 U.S.C. § 2254. This extraordinary case required an examination of the law involving not only the so-called "exhaustion of remedies" concept but also the other concepts present in this important and difficult area.

In the light of the authorities and the precedents, we find our duty clear.

The order of dismissal is reversed and the case remanded to the district court with instructions to issue the writ and to order that the prisoner's conviction be set aside and that he be discharged from custody unless forthwith accorded a new trial.

We are indebted to the Legal Aid Society and to its appellate counsel for a most able presentation in relator's behalf.

LEONARD P. MOORE, Circuit Judge (dissenting).

The function of the federal courts in a habeas corpus proceeding brought to test a state court conviction challenged as invalid under the Fourteenth Amendment for want of due process is not to substitute their own conceptions of sub-

---

12. The earlier complaint did not result in a final order, and, therefore, could never have reached the U. S. Supreme Court for review. However, that litigation, although not involving a final order, was appealable to the state supreme court. It was the railroad's failure to appeal to the state court which presented the potential adequate state ground. The finality of the first proceeding before the state commission and the chances of reaching the U. S. Supreme Court could not have resolved the question whether the railroad's failure to appeal in the state system was an adequate ground of decision so as to cut off federal review of the federal issues.

stantive and procedural justice for that of the state but rather to determine whether the state has denied the relator due process of law. Thus, attention must be concentrated upon those processes made available to relator by the state to assure him of adequate opportunities and facilities to claim and to have adjudicated his constitutional rights. The lengthy opinion of the majority, while paying occasional lip service to certain fundamental and well-established jurisdictional principles relating to federal review of state convictions, actually repudiates in radical fashion the very principles developed over the years by the Supreme Court. The doctrine now enunciated by the majority is that whenever a group of appellate judges wish to depart from previously settled principles, they may find that "extraordinary circumstances" exist and that such a finding entitled them to ignore on an *ad hoc* basis all otherwise applicable principles. Realizing that such a declaration has alarmist implications, it will be necessary to analyze the facts, the law and the majority opinion rather critically lest the cry of "wolf-wolf" rouse in vain those watchful of the administration of criminal justice.

On May 11, 1941, Noia, Bonino and Caminito were apprehended and thereafter charged with first-degree murder. Upon a jury trial, they were convicted. Clemency was recommended by the jury so that sentences of life imprisonment instead of death were imposed. Bonino and Caminito appealed through the state courts and sought certiorari from the Supreme Court which was denied. Noia, the relator here, having been advised by counsel of his right to appeal, chose not to do so. On the habeas corpus proceeding, there was testimony given by Noia's trial counsel that Noia did not wish to risk an appeal which, if successful, might result in a re-trial upon which, if convicted, the death penalty might be imposed. Noia testified that he had no funds to retain an attorney to prosecute an appeal and did not wish to put his family further into debt. The

trial court made no findings on these factual issues.

As a result of the court proceedings set forth in the majority opinion, Bonino and Caminito find themselves relieved of their judgments of conviction because of decisions that coerced confessions were used against them. Quite naturally, Noia regrets his original decision not to appeal and, despite this failure, wishes to enjoy the same benefits as his former co-defendants. And so he now argues that, although he has knowingly and voluntarily failed to appeal and no longer has the right to appeal, he may still substitute federal habeas corpus for the state provided appellate procedure which he chose not to pursue.

Were such an argument to be accepted as sound, any defendant convicted in a State court after a trial, in which an allegedly coerced confession has been used and in which the question of coercion has been fairly submitted for jury determination, can in the event of an adverse decision obtain a new trial of the identical issue before a federal judge merely by allowing the time to appeal to elapse and then applying under Section 2254 for a federal writ. To the majority, such failure is without legal significance because it should "not sit well on the consciences of civilized men that a man should spend the rest of his life in confinement when it is patent to all that the only reason for the detention is that he did not timely appeal his conviction" (Maj.Op., p. 362).

In order to accomplish the result they desire, the majority have to find that Noia's right to habeas corpus was not barred by any one of three well-established rules of federal review: (1) that a party cannot seek to have a conviction set aside on the ground that his constitutional rights were violated if he has intentionally waived his right to assert that claim; (2) that federal habeas corpus is not available to state prisoners who have not exhausted their state remedies, 28 U.S.C. § 2254; and (3) that state convictions are not subject to federal

review if there is an adequate state ground which will sustain the conviction.

Thus, "The first question before us is whether, inasmuch as his conviction was not appealed, Noia waived his undeniable constitutional right of being tried without his coerced confession in evidence" (Maj.Op., p. 350). In answering this question, the majority starts out by purporting to adhere to legal principles and by conceding that "waiver is ordinarily 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938)." Next they recognize that, "It would seem that a conscious and willing failure to appeal could indeed be a form of waiver. Brown v. Allen, 344 U.S. 443, 503 [73 S.Ct. 397, 437, 97 L.Ed. 469] (1953) (opinion of Frankfurter, J.)." Undisputedly Noia knew that a "coerced" confession had been used against him on his trial. His failure to appeal was "conscious and willing" enough. What better exercise of judgment than to exercise it in favor of saving his life. The majority "cannot believe that Noia would consciously and willingly have surrendered his constitutional right had he known then what he knows now:". Nor can I. What defendant would ever plead guilty or waive for good cause his right to appeal if he knew in advance that he would be acquitted or that his conviction would be reversed and the indictment dismissed. Nevertheless, the decision of the majority is that "relator did not waive his right under the Fourteenth Amendment not to be tried and convicted solely upon his coerced confession.", and that despite the adequacy of State appellate procedure, Noia was not required to use it because "it was not at all clear that Noia could convince an appellate court of the unconstitutionality of his treatment" (Maj.Op., p. 351).

Since the question of whether Noia intentionally waived his right to claim that a coerced confession was used against him involved an issue of fact, it is not proper for the majority to substitute its speculation and its conclusions as to why Noia failed to appeal for the evidence actually presented to the district court and to formulate a judgment were based on facts now known rather than on the facts existing at the time of the conviction. As previously mentioned, in the hearing before the district court Noia's trial counsel testified for the state that Noia did not appeal because he feared that on retrial the death penalty might be imposed. If we accept this as true, it is clear that Noia intentionally waived his right to claim that a coerced confession was used against him. Although this testimony was contradicted by Noia's testimony, the district court did not make any finding on this question because it believed that its decision on the § 2254 issue made such a finding unnecessary. 183 F.Supp. at p. 225 n. 4. Thus, even if the majority were correct in holding that Noia's right to federal review was not barred because of a failure to exhaust state remedies or by an adequate state ground, this court should not order the district court to issue the writ because there is still a question of fact on the issue of waiver that must be decided by the district court.

The majority next turns to the question, "whether [Noia's] failure to appeal his conviction precludes him from relief under the Great Writ because of the requirement in 28 U.S.C. § 2254 * * * that a petitioner exhaust his state remedies before seeking federal habeas corpus." While recognizing that "language in certain recent Supreme Court decisions indicates that interpreting the section to apply only to the exhaustion of presently available remedies would be erroneous" (Maj.Op., p. 356), the majority finds it plausible to interpret § 2254 "simply to mean that when both the state and the federal courts are available to a particular state prisoner he should go into the state court first."

Since I believe that Noia is not entitled to federal habeas corpus because his conviction is supported by an adequate state ground which precludes federal review (to be discussed infra) and also because he probably waived his constitutional

claim, there would be little to be gained from my setting forth extensively my views on whether § 2254 applies to past as well as present state remedies although, in my opinion, a more reasonable reading of the statute would be one which would not permit a defendant to fail wilfully to avail himself of the due process which the state accords him and then claim exhaustion of remedy. However, since the majority have chosen to deal with this question at length, they should have given some consideration to the question, which will no doubt plague the district courts, namely, how does this decision affect our prior ruling in United States ex rel. Kozicky v. Fay, 2 Cir., 1957, 248 F.2d 520. In Kozicky, a case in which the defendant had failed to appeal to the New York Court of Appeals from a state court conviction, the author of the majority opinion in this case said (for a unanimous panel), "If the state provided such a remedy (i. e., an appeal) and the petitioners failed to take advantage of it, we hold they cannot obtain a writ of habeas corpus from a federal court. This result is a necessary consequence of * * * 28 U.S.C.A. § 2254." 248 F.2d at 522. He continued, "But, where the failure of a prisoner to obtain relief is due to his own inaction, 28 U.S.C.A. § 2254 prohibits intervention by the federal courts." 248 F.2d at 523. Does the majority wish to overrule Kozicky completely or would they hold that the decision was right but the reasoning was wrong? What of the statement in Kozicky that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts (sic) to correct a constitutional violation" (248 F.2d at 523, quoting from United States ex rel. Marcial v. Fay, 2d Cir., 1957, 247 F.2d 662)?

Lastly after conceding that "an adequate state ground of decision will preclude relief under federal habeas corpus,"

the majority pose the question: "Whether Noia's failure to appeal his conviction is a state procedural ground adequate to bar his path to freedom under the federal writ" (Maj.Op., p. 359). Thus, the majority has "come to the last scene in this human drama" "dooming relator to life imprisonment." Legal principles having failed to produce the desired result, resort must be had to a *tour de force* by the fiat that "No state ground is entitled to unqualified deference" and "adequacy" in any event is but "a term of relativity." After all, "for the state ground to be adequate, it must be reasonable," and what could be more unreasonable than requiring a defendant to appeal?

From here on the denouement comes rapidly. The "simple failure to appeal, reasonable enough to prevent federal judicial intervention in most cases, is in this particular case unreasonable and inadequate."

However, the adequate state ground doctrine, namely, that a federal court cannot consider the merits of a constitutional claim alleged to invalidate a state conviction if that claim was not presented to the state courts by the use of all reasonable state procedures, cannot be disregarded as easily as the majority assumes. As Mr. Justice Frankfurter said in reference to this doctrine:

> "Something that goes to the very structure of our federal system in its distribution of power between the United States and the States is not a mere bit of red tape to be cut, on the assumption that this Court has general discretion to see justice done. Nor is it one of those 'technical' matters that laymen, with more confidence than understanding of our constitutional system, so often disdain." [Irvin v. Dowd, 359 U.S. 394, 408, 79 S.Ct. 825, 833, 3 L.Ed. 2d 900, 1959 (dissenting opinion).] [1]

The decision of the Supreme Court in Daniels v. Allen, decided sub nom. Brown

---

1. The majority in Irvin never questioned the validity of the adequate state ground rule for they read the state court decision as resting on the federal ground.

v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437, 97 L.Ed. 469, 1953, clearly controls the issues in this case and requires affirmance of the dismissal of the writ. The petitioners in Daniels had made timely objection to the introduction in evidence against them of confessions which were alleged to have been coerced and had also made timely motions at their trial to quash the indictment and challenge the array, alleging discrimination against Negroes in the selection of the grand and petit jurors. On appeal, the Supreme Court of North Carolina refused to examine these constitutional claims because the statement of the case on appeal had been filed one day after the period of limitation for such service. After the Supreme Court had denied certiorari and the state court twice denied leave to apply for *coram nobis,* the petitions for habeas corpus were filed alleging the use of a coerced confession and discrimination in the selection of the grand and petit jurors. The Supreme Court in affirming the denial of the writ refused to pass on the substance of the federal claims because "the failure to serve the statement of the case on appeal seems to us decisive * * *." 344 U.S. at 483, 73 S.Ct. at 420. In holding that the state procedural ground was sufficient to preclude collateral review of constitutional claims, the Court said,

> "The writ of habeas corpus in federal courts is not authorized for state prisoners at the discretion of the federal courts. It is only authorized when a state prisoner is in custody in violation of the Constitution of the United States. 28 U.S. C. § 2241, 28 U.S.C.A. § 2241. That fact is not to be tested by the use of habeas corpus in lieu of an appeal." (344 U.S. at 485, 73 S.Ct. at 421.)

While the majority admit that Daniels established that an adequate state ground of decision will preclude relief under federal habeas corpus, they attempt to avoid the application of Daniels by claiming that there are "exceptional circumstances" in this case which justify the

disregarding of the adequate state ground for decision. However, an examination of the facts in the Daniels case and in Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83, 1955, shows that the rigor with which the Supreme Court has applied the adequate state ground rule precludes the making of an exception. In Daniels, the petitioners who were under sentence of death did not fail to appeal at all (as in this case) but were merely one day late in serving the case on appeal. On the last day for serving the case on appeal, petitioner's attorney had called at the prosecuting attorney's office to serve him but the prosecutor was out of town; had petitioner's attorney mailed the statement on that day instead of delivering it on the next official day, the service would have been adequate.

In Michel v. Louisiana, despite the fact that the petitioner was under sentence of death in Louisiana, the Supreme Court refused to pass upon his constitutional claim because of a failure to comply with state procedure. Michel, a Negro, claimed that he had been denied due process of law because there had been a systematic exclusion of Negroes from the grand jury panel which indicted him. Louisiana law required that objections to a grand jury be raised before the expiration of the third judicial day following the end of the grand jury's term but Michel's motion to quash the indictment had not been filed until the fifth judicial day after the expiration of the term. This procedural ground was found adequate to prevent review of the constitutional claim even though Michel's counsel was not appointed until the day the grand jury's term expired and did not receive formal notice of appointment until three days later. It is also significant that in Michel it was clear that there had been a violation of Michel's constitutional rights. Mr. Justice Black, dissenting, pointed out that in the memory of people living in the parish there had been only one Negro selected to serve on a grand jury in that parish and he happened to look like

a white man. 350 U.S. at 102, 76 S.Ct. 158.

A comparison of the facts of the Daniels and Michel cases with those in the present case shows that the adequate state ground rule does not yield to exceptional cases as the majority contends:

(1) In both Daniels and Michel, the appellants were under sentence of death, while here the appellant is subject only to imprisonment.

(2) In both Daniels and Michel, the petitioners attempted to avail themselves of state procedures and came within days of doing so; here the petitioner never sought to appeal and did not raise his claim in the state court until fourteen years after his conviction.

(3) In both Daniels and Michel, there were extenuating circumstances which could have been considered as supplying a reason for the appellants' failure to comply with the state procedures.

(4) In Michel, it was, at least, as clear as it is here that there had been a denial of constitutional rights.

I do not contend that state procedural grounds for denying a hearing to federal claims must always be considered adequate to preclude federal review of that claim. Certainly, a procedural ground will not bar federal review if the state procedure discriminates against the assertion of federal claims, Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161, 1955; Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751, 1920; N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, 1958, or unreasonably prevents the assertion of federal rights, Davis v. Wechsler, 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143, 1923; Rogers v. Alabama, 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417, 1904; Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77, 1955; Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302, 1958. However, inadequacy must be determined according to principles established by the Supreme Court. Since Daniels v. Allen has established that the failure to take an appeal is a reasonable ground for a state's refusal to entertain constitutional claims, we should not now hold that the failure to appeal is not a reasonable ground for denying a hearing to such claims unless the petitioner did not have an "opportunity to appeal because of lack of counsel, incapacity, or some interference by officials." Daniels v. Allen, 344 U.S. at 485, 73 S.Ct. at 422. However, the petitioner here had a hearing before the district court at which he was afforded an opportunity to present facts which might have excused his failure to appeal. After weighing the proof, the district court found that "the hearing utterly failed to reveal any such circumstances."

The reliance of the majority on the "exceptional circumstances" language in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950), and Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), both of which were concerned with the exhaustion problem under § 2254, is misplaced. It is interesting to note that the majority recognizes that the exhaustion of state remedies doctrine under § 2254 is distinct from the adequate state ground doctrine; yet without discussion, they find that, if there are exceptions to the exhaustion doctrine, there are like exceptions to the adequate state grounds doctrine. However, in my opinion, a proper analysis of these doctrines shows that the exception rules of the one are not applicable to the other.

The majority, in recognizing that "all the cited cases from Ex parte Royall to Hawk recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case," Darr v. Burford, 339 U.S. at 210, 70 S.Ct. 587, 593, 94 L.Ed. 761, should also have noted that the Supreme Court has always recognized that it had the power to hear these exhaustion cases without requiring resort to the state courts. Thus, the Supreme Court said in Darr v. Burford:

"Ex parte Royall, decided in 1886, held that a federal district court *had*

*jurisdiction to release* before trial a state prisoner who was held in violation of federal constitutional rights but it approved denial of the writ as a matter of discretion." 339 U.S. at 205, 70 S.Ct. at 590. (Emphasis added.)

Although the requirement of exhaustion of state remedies is a matter of discretion and "special circumstances" might require the exercise of that discretion so as to hear the federal claim on the merits even though state procedures are not exhausted, in cases in which an adequate state procedural ground for decision has been held to cut off federal review, the Supreme Court has often stated that the fact that the judgment of conviction was supported by a procedural ground for decision deprived it of the power to set aside the conviction. Whitney v. California, 274 U.S. 357, 372, 47 S.Ct. 641, 71 L.Ed. 1095, 1927 (Brandeis, J., concurring); Herndon v. Georgia, 295 U.S. 441, 442, 55 S.Ct. 794, 79 L.Ed. 1530 (1935); Edelman v. California, 344 U.S. 357, 73 S.Ct. 293, 97 L.Ed. 387, 1953; Irvin v. Dowd, 359 U.S. 394, 412–413, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959) (Harlan, J., dissenting); Wolfe v. North Carolina, 364 U.S. 177, 196, 80 S.Ct. 1482, 4 L.Ed.2d 1650, 1960; see Cicenia v. Lagay, 357 U.S. 504, 507 n. 2, 78 S.Ct. 1297, 2 L.Ed.2d 1523. Although all of these cases except Irvin v. Dowd, involved direct review, Mr. Justice Harlan pointed out in Irvin that the same rule applies in habeas corpus cases:

"It is clear that the federal courts would be without jurisdiction to consider petitioner's constitutional claims on habeas corpus if the Supreme Court of Indiana rejected those claims because, irrespective of their possible merit, they were not presented to it in compliance with

the State's 'adequate and easily-complied-with method of appeal.' Brown v. Allen, 344 U.S. 443, 485 [73 S.Ct. 397, 437, 97 L.Ed. 469]." [359 U.S. at 412–413, 79 S.Ct. at 835].[2]

Neither Patterson v. Alabama, 294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082 (1935), nor Williams v. Georgia, supra, support the proposition that on a clear showing of a constitutional deprivation, the federal courts can ignore an adequate state ground. In Patterson, supra, the Supreme Court recognized that even though the federal right was clear, the state could refuse to hear that claim because of a failure to comply with state procedures. 294 U.S. at 605, 55 S.Ct. 575. The Court decided to remand, however, because it was not certain that the state court would have considered itself powerless to consider the constitutional claim if it had been aware of the merit of that claim. A reading of Patterson implies that the state on remand could have again rested its decision on the state procedural ground and that the Supreme Court would not then have reviewed that decision. Since in this case the state court was fully aware of the validity of the constitutional claim when it asserted that Noia's failure to appeal precluded review of his federal claim, see 3 N.Y.2d at 598—599, 170 N.Y.S.2d 799, 148 N.E.2d 139, the reasoning of Patterson is inapplicable here.

Williams not only does not support the proposition that the federal courts can ignore an adequate state ground, but shows the reluctance of the Supreme Court to interfere with state court proceedings. In Williams the court found the procedural ground of the decision inadequate because the state court had discretion to hear the constitutional claim even though there was a failure to comply with the proper procedure and the

2. Although this statement appears in a dissenting opinion, it appears that a majority of the Court agreed on this point. Justices Frankfurter, Clark and Whittaker concurred in Mr. Justice Harlan's dissent, and it would seem that Mr. Justice Stewart would agree with this state-

ment for he concurred with the majority "with the understanding that the Court does not here depart from the principles announced in Brown v. Allen, 344 U.S. 443 [73 S.Ct. 397, 97 L.Ed. 469]." [359 U.S. at 407, 79 S.Ct. at 832].

372

state court had consistently exercised that discretion so as to hear the merits of appeals in similar cases. The inadequacy of Williams, therefore, arose from the fact that the state court had refused to exercise its discretion "to entertain a constitutional claim while passing upon similar issues raised in the same manner." 349 U.S. at 383, 75 S.Ct. at 819; see Wolfe v. North Carolina, 364 U.S. 177, 188, 80 S.Ct. 1482, 4 L.Ed.2d 1650; Note, Supreme Court Treatment of State Procedural Grounds Relied on in State Courts to Preclude Decision of Federal Questions, 61 Colum.L.Rev. 255, 266–67 (1961). Even though the Court had jurisdiction to hear the merits of the case in Williams, and did, in fact, find a denial of a constitutional right, out of deference to the State courts it did not reverse the conviction, but instead remanded the case to the state court because in the argument before the Supreme Court the State Attorney General conceded that there had been a constitutional violation, although he had insisted before the Georgia Supreme Court that there had been no such violation. This refusal of the Court to reverse a conviction even though it had jurisdiction to do so well illustrates the deference which the Court pays to state proceedings.

The opinion of the majority could have been written in one sentence substantially, as follows: "In any criminal case in a State court wherein a confession was introduced and a conviction resulted, the defendant may, at any time thereafter without appealing such conviction or exhausting any other available state remedy, claim upon petition for a writ of habeas corpus that such confession was coerced and, upon a finding to that effect by a federal judge, a writ shall issue to the State directing the defendant's release from custody (citing cases if there be any)." If this is to be the rule of law, is not a reappraisal of our criminal procedure in this field called for? If the delicate balance of the State-Federal relationship is to be upset, possibly the majority's approach is best, namely, upset it drastically. If each case is to be decided on its own "exceptional situation" basis, let this principle be declared so that consideration of the scores of habeas corpus appeals which come before this court every year can be unfettered by legal principles. No longer will it be necessary after due deliberation to write "Failure to exhaust State remedies" or "No federal question." And in fairness to the two distinguished appellate courts in New York, would it not be better to advise them that in any case before them involving a coerced confession they are but puppets whose strings may be cut at any time by the keen edge of the "Great Writ." It may well be that there should be a definite rule that no case involving an allegedly coerced confession should be tried in a state court or, stated differently, that such a case should be tried only before a federal judge. Whether this should be is for those far more learned in such matters than I to determine. I point out only that such is not the law at the present time—at least until the filing of the majority opinion.

I would affirm.